UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERK'S OFFICE

[illegible] MAY 30   P 4: 21

U.S. DISTRICT COURT
DISTRICT OF MASS

LORETTA ROLLAND, et al.,

Plaintiffs,

v.

ARGEO PAUL CELLUCCI, et al.,

Defendants.

CIVIL ACTION
NO. 98-30208-KPN

## MEMORANDUM IN OPPOSITION TO PLAINTIFFS' CONSOLIDATED THIRD AND FOURTH REQUESTS FOR ATTORNEYS' FEES

### INTRODUCTION

In their consolidated third and fourth requests for attorneys' fees the plaintiffs seek a total of $ 923, 869 as fees for the work of seven attorneys and three paralegals during the period January 1, 2001, to December 31, 2002.[1]  In total, the plaintiffs request compensation for 3,491 hours of attorney time and 1,906 hours of paralegal time.  The defendants oppose this fee request because: (1) the hours claimed for specific litigation-related enforcement activity are excessive, and should be substantially reduced as explained below, and (2) the hours claimed for monitoring the implementation of the settlement agreement – as opposed to enforcement litigation in which plaintiffs prevailed – are not compensable after the Supreme Court's decision in Buckhannon

---

[1]  This amount is in addition to the $1,509,818 in fees and costs previously awarded to plaintiffs' counsel in this case.

1

Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources, 532 U.S. 598 (2001).

The parties have reached agreement on the litigation-related costs for which defendants will reimburse plaintiffs. The parties have also agreed on the hourly rates that should apply to this fee request, which are set out in plaintiffs' Exhibit 1 (under "compromised rate").[2] Accordingly, the issues for determination by this Court are whether the hours claimed by plaintiffs for litigation-related enforcement activity are reasonable, and whether the hours claimed for monitoring are compensable. The defendants urge that in each case the answer is no, and ask that the Court award no more than $546,892 in attorneys' fees, for the reasons set out below.

## Litigation Activity During 2001 and 2002

Although the plaintiffs seek attorneys' fees for a period of two years, this case was in active litigation for much less than that. On March 27, 2001, this Court lifted the stay of this case imposed under paragraph 28 of the parties' Settlement Agreement, after finding that "as of June 30 2000, Defendants were not substantially complying with paragraphs fifteen and sixteen of the Settlement Agreement." Rolland v. Cellucci, 138 F. Supp.2d 110, 121 (D. Mass. 2001).[3] The Court's order permitted further proceedings only with respect to paragraphs 15 and 16 of the Settlement Agreement, which require the defendants to provide class members "specialized

---

[2] The defendants do not concede the reasonableness of plaintiffs' costs or of the compromise hourly rates, but have reached agreement with respect to both in order to resolve as much of this fee request as possible.

[3] Briefing and argument on the Motion for Further Relief Concerning Specialized Services (docket no. 159) occurred during 2000, and so is not relevant to the current fee application.

services" identified through the preadmission screening and annual resident review ("PASARR")

process. Id. at 112, 121. On or about June 23, 2001 the Court issued a Revised Scheduling

Order requiring plaintiffs to file an amended motion for further relief concerning specialized

services, establishing a "fact cut-off" period of August 31, 2001, and providing for an expedited

and limited discovery period beginning with the filing of written discovery on July 24, 2001 and

the conduct of expert and non-expert depositions in September and October of 2001.[4] The Court

held a four day evidentiary hearing on plaintiffs' motion in early November of 2001. After the

hearing, the parties filed proposed findings of fact and memoranda of law, and the court heard

oral argument on January 23, 2002. See Rolland v. Cellucci, 198 F. Supp.2d 25, 28 (D. Mass.

2002).[5]

Unlike the initial period of this case, which involved a wide-range of "benchmark"

litigation, mediation and settlement-related activities covering the full breadth of issues raised in

the case, the plaintiffs confronted a single "core issue" in the 2001 and 2002 proceedings –

"whether Defendants are in compliance with their obligations to provide specialized services[]"

to class members who are determined under the PASARR process to need them. Rolland, 198 F.

Supp. 2d at 36. To prove such non-compliance, the plaintiff submitted evidence from expert

witnesses who, collectively, had interviewed and reviewed the records of various class members.

---

[4]   During this period, there were several "emergency" motions filed by plaintiffs, including an unsuccessful Emergency Motion to Require Identification of All Trial Experts and To Produce Reports that was denied by the Court on September 28, 2001.

[5]   Also, between March 27, 2001 through July 2001, the parties were engaged in fee litigation relating to the plaintiffs' second fee request, culminating in an attorney fee award of $289,765, with $28,247.01 in costs. In July, 2001, plaintiffs filed a motion for reconsideration of the award that was denied.

On May 3, 2002, this Court issued a memorandum and order finding that the defendants had not "adequately provided specialized services" and ordering relief. 198 F. Supp. 2d at 28. The only further enforcement-related litigation proceedings in 2002 concerned questions arising under the May 3 Order, resulting in three appearances before this Court between July and November 2002, but no formal discovery or evidentiary hearings.

## ARGUMENT

### I.   THE HOURS CLAIMED FOR LITIGATION-RELATED ENFORCEMENT ACTIVITY ARE EXCESSIVE, AND SHOULD BE SUBSTANTIALLY REDUCED.

The considerations that guide the Court's determination of a "reasonable" attorneys' fee are well settled. The Court typically calculates the lodestar "by ascertaining the time counsel actually spent on the case 'and then subtract[ing] from that figure hours which were duplicative, unproductive, excessive, or otherwise unnecessary.'" Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992), quoting Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984). The Court then applies hourly rates to the various tasks, considering the prevailing community rates for comparable attorneys. Id. The trial court is not, however, "in thrall to an attorney's time records" when calculating the lodestar. Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 337 (1st Cir. 1997). Rather, the Court can exercise its discretion to "segregate time spent on certain unsuccessful claims [and] eliminate excessive or unproductive hours," and may ultimately "fashion a lodestar which differs substantially from the fee requested by the prevailing party." Rolland v. Cellucci, 106 F. Supp.2d 128, 134 (D. Mass. 2000), quoting Coutin, 124 F.3d at 337.

"[A] request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). Accordingly, the First Circuit has "never required that

4

[district] courts set forth hour-by-hour analyses of fee requests" when calculating the number of reasonable hours expended on the case. United States v. Metropolitan. Dist. Comm'n, 847 F.2d 12, 16 (1st Cir. 1988), quoting Jacobs v. Mancuso, 825 F.2d 559, 562 (1st Cir. 1987). But, the District Court must "engage in a thoughtful analysis of the number of hours expended . . . to ensure [they] are reasonable." Guckenberger v. Boston University, 8 F. Supp.2d 91, 100 (D.Mass. 1998). See also King v. Greenblatt, 560 F.2d 1024, 1026-27 (1st Cir. 1977). "In doing so, the court is obliged 'to see whether counsel substantially exceeded the bounds of reasonable effort,'" Rolland, 106 F. Supp.2d at 134, quoting Metropolitan Dist. Comm'n, 847 F.2d at 17, and should reduce the requested fee where counsel have done so. See, e.g., Grendel's Den, 749 F.2d at 955 (reducing to 200 hours the allowable time for Supreme Court work in First Amendment case).

It is evident that the plaintiffs' counsel far exceeded "the bounds of reasonable effort" and that their consolidated third and fourth fee request is, on its face, excessive. The plaintiffs seek a total of $ 923,869 as fees for the work of seven attorneys and three paralegals during the period January 1, 2001, to December 31, 2002. In total, the plaintiffs request compensation for 3,491 hours of attorney time and 1,905 hours of paralegal time.

This tremendous number of hours is altogether out of proportion to the activity in this case during 2001 and 2002. During this period, there was substantial litigation activity only during the several months leading up to November 2001 evidentiary hearing, for a limited period thereafter during which the parties prepared their proposed findings and legal memoranda, and in the preparation of the plaintiffs-appellees' brief in the appeal that followed the entry of the May 2, 2002 Order. In addition, on three occasions in 2002, the plaintiffs' raised discrete issues

5

concerning the defendants' implementation of the May 3, 2002 Order that prompted appearances

before this Court, but no formal discovery or evidentiary hearings.  Unlike the initial period of this

case, which involved a wide-range of "benchmark" litigation, mediation and settlement-related

activities covering the full breadth of issues raised in plaintiffs' multi-count complaint, see

Rolland v. Cellucci, 106 F. Supp.2d 128, 132 (D. Mass. 2000) (describing case activity), the

plaintiffs confronted a "core issue" in the 2001 and 2002 proceedings -- "whether Defendants are

in compliance with their obligations to provide specialized services[]" to class members who are

determined under the PASARR process to need them.  Rolland, 198 F. Supp. 2d at 36.[6]   In the

present fee request, the plaintiffs seek very close to the amount that was awarded on their first

application, for the much narrower range of issues and activities occurring during 2001 and 2002.

Cf. Rolland v. Cellucci, 106 F. Supp.2d 128, 131 (D. Mass. 2000) (awarding $ 986,810 in

---

[6]  In contrast, the following occurred in the initial period:

The court approved the parties' proposed scheduling order in January of 1999, certified
the class in February, soon thereafter denied Defendants' motion to stay the certification,
approved the parties' interim agreement for specialized services in March of 1999 (shortly
before an evidentiary hearing was scheduled to begin), and set November 1, 1999, for
trial on all remaining issues. In June of 1999, the court denied Defendants' motion to
dismiss and, in the fall of 1999 — before requiring Plaintiffs to respond to Defendants'
motion for summary judgment — awaited the parties' efforts to mediate their dispute. The
mediation resulted in a final settlement just prior to trial. After conducting a fairness
hearing on December 17, 1999, the court approved the settlement agreement on January
10, 2000.

In the midst of these benchmarks, Plaintiffs propounded two sets of interrogatories to
several state agencies, deposed twenty-two witnesses and obtained and reviewed more
than one hundred thousand pages of documents.  The parties completed written discovery
by June 4, 1999, expert tours of various facilities were concluded and reports thereon
provided by July 30, 1999, and depositions were completed by August 31, 1999.

Rolland v. Cellucci, 106 F. Supp.2d 128, 132 (D. Mass. 2000)

attorneys' fees for initial period). Plaintiffs are not justified in devoting a similar effort – and

hours – to this later period. See Gay Officers v. Com. of Puerto Rico, 247 F.3d 288, 298 (1st Cir.

2001) (citing skepticism "about the use of four attorneys to litigate a single claim"). Accordingly,

any fee award for 2001 and 2001 should be substantially less than that awarded in the inital

period. For that reason, the total fee award of $546,892 proposed in the memorandum is justified

in proportion to this Court's initial fee award in this case.

In addition, as set forth below, there are various specific grounds for reduction of the time

claimed in the plaintiffs' billing records. To arrive at a proposed fee award, the defendants

recommend at the conclusion of this memorandum a specific percentage reduction of the hours

claimed by each attorney. These specific percentages reflect the extent to which each attorney's

time is excessive under the reasoning articulated in the sections that follow.

**A.    There Was Significant Duplication of Effort Among Plaintiffs' Seven
Counsel and Three Paralegals in Excessive Conferencing and in Expert
Tours.**

The pattern of excessive conferencing and consultations among plaintiffs' counsel, which

the Court identified in plaintiffs' initial fee application, also persists here. See Rolland, 106 F.

Supp.2d at 141 (finding that "the coordination among Plaintiffs' representatives required

excessive consultations"). Defendants have identified approximately 130 hours in time entries

indicating conference calls or meetings involving at least *three* attorneys. Maislen Aff., Ex. A. In

addition, all counsel's time sheets are replete with entries for telephone conferences and meetings

with one co-counsel or paralegal. Ms. Costanzo's billing records have particularly high numbers

of these entries, which dominated the time she recorded on many pages. See, e.g. Pl. Ex. 14,

pages 5, 17, 37. This and other factors boost her total hours claimed (1,091) to an unjustifiably

high level. Scores of conferences and consultations among counsel, over the course of two years, greatly increased the cost of plaintiffs' representation. "Excessive telephone calls and conferences represent a duplication of effort for which less than full fare should logically be charged for all participants." Guckenberger, 8 F. Supp.2d at 101. See Spell, 852 F.2d at 768 (reducing hours to account for "extensive conferencing" among plaintiffs' counsel). See, e.g., Weinberger v. Great N. Nekoosa Corp., 801 F. Supp. 804, 819 (D.Me. 1992) (disallowing 80% of time spent in co-counsel conferences), aff'd, 47 F.3d 463 (1st Cir. 1995); Mokover v. Neco Enters., Inc., 785 F. Supp. 1083, 1090 (D.R.I. 1992) (reducing charges for co-counsel conferences by 20%).

In addition, the plaintiffs' cannot justify billing for the time of attorneys to accompany experts on tours of nursing facilities. See Rolland, 151 F. Supp. 2d at 157-58 (noting that plaintiffs' attorneys claim fees for accompanying experts on tours when this "could have been done by paralegals.") Indeed, for seven different days in July and August 2001, plaintiffs seek fees for *two attorneys* (and sometimes a paralegal) who accompanied an expert to a nursing facility; total billings for these days are $30,625. Maislen Aff., Ex. F. All of this time should be eliminated. See also Halderman v. Pennhurst State School & Hospital, 49 F.3d 939, 942 (3rd Cir. 1995) (disallowing compensation at attorneys' rate for escorting experts on site visits and questioning compensation for same at paralegal rate).

## B.    Plaintiffs' Counsel Spent Excessive Time on Research, Drafting and Editing.

Plaintiffs' counsel also billed unreasonably large amounts of time for legal research, and for drafting and editing legal memoranda. This should have been unnecessary given that the case was staffed with attorneys possessing very considerable expertise in disabilities law who are

compensated at substantial hourly rates. In some cases, the excessive time resulted from the use of multiple drafters and editors. In other cases, an individual attorney (often Ms. Hattrick) spent inordinately long periods of time doing research – which may or may not have been used – or drafting basic discovery or evidentiary motions. This time should be substantially reduced. See Rolland v. Cellucci, 106 F. Supp.2d 128, 141 (noting examples of excessive time spent on "research, drafting and analysis").

The preparation of the plaintiffs' Post-Hearing Brief and Findings of Fact in November and December 2001 is a vivid example of how quickly attorneys' fees accumulate when too many lawyers are drafting and editing. For these two documents alone, the plaintiffs request reimbursement for 6 attorneys and one paralegal n the amount of $ 66,576. See Maislen Aff., Exs. B and C (setting out each attorney's time and charges). This is an astonishing total in view of the fact that the hearing lasted only four days and addressed the "core" issue related to the provision of specialized services, as described above. This multi-author effort was plainly inefficient and yielded excessive time that should be significantly reduced. See, e.g., Hedley-Whyte v. Unum Life Ins. Co. of America, 1996 WL 208492 at *4 (D. Mass. 1996) (reducing fee award where attorneys spent over one week of billable time to draft a seven-page complaint).

The plaintiffs request fees in the amount of $ 71,754 for 597 hours of the time of attorney Kristi Hatrick, an associate at Foley Hoag. Ms. Hatrick's time was almost exclusively devoted to legal research and to drafting internal memoranda, motions and briefs. Hatrick Aff., ¶¶ 5-10. Ms. Hatrick's time is excessive on its face, and should be reduced by at least 60%. The plaintiffs cannot justify the enormous amount of time Ms. Hatrick spent preparing basic discovery and evidentiary motions, Hatrick Aff., ¶¶ 6, and for her other research and related activities, especially

where her work was also reviewed and edited by other counsel.  It is apparent from even a cursory review of Ms. Hatrick's time sheets that her research and writing often "substantially exceeded the bounds of reasonable effort," such as to preclude compensation.  <u>See</u> <u>Metropolitan Dist. Comm'n</u>, 847 F.2d at 17.  For example, between August 25, 2002, and September 13, 2002, Ms. Hatrick devoted a large block of time to research and preparation of an internal memorandum regarding appellate jurisdiction and the standard of appellate review, an issue that does not appear to have figured at all in the appeal.  As another example, Ms. Hatrick billed 40 hours for "supervising" research assignments ostensibly performed by summer associates at Foley Hoag in 2002, Maislen Aff., Ex. G, even though the summer associates' time was not billed and there is no indication that any of that research was ever used.  Ms. Hatrick also spent large blocks of time on a series of basic motions leading up to the November 2001 hearing, such as 29.6 hours (between September 23 and October 9) on a motion to compel discovery and 26.4 hours (between October 15 and October 22) on motion in limine.  Pl. Ex. 18, pages 7-11.  The time for these and other excessive efforts should be eliminated.

### C.   Most of the Hours Claimed by Attorneys Engle, Belin, and Laski Should be Eliminated as Duplicative.

This Court has recognized that "where more than one lawyer represents the prevailing party, . . . the [fee] award should reflect all those efforts . . . only 'to the extent that the time reported does not reflect duplication of effort . . . .'"  <u>Rolland</u>, 106 F. Supp.2d at 141, quoting <u>Reynolds v. Coomey</u>, 567 F.2d 1166, 1167 (1st Cir. 1978).  "A trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism."  <u>Lipsett</u>, 975 F.2d at 938.  The duplication of effort among plaintiffs' seven attorneys is particularly evident

10

in the billing entries of attorneys Belin, Engel and Laski, and justifies large reductions of their time.

Attorney Engel seeks reimbursement in the amount of $56,980 for 278 hours at $205 per hour. Yet plaintiffs' affidavits do not justify this very substantial accumulation of time – approximately 7 weeks at 40 hours per week. Mr. Engel "played a limited role in the monitoring phase of this case, attending meetings with DMR and researching active treatment reqirements." Schwartz Aff., ¶ 4 (P. Ex. 4). As to the specialized services enforcement motion, he performed a limited array of tasks, including reviewing written discovery from two agencies, drafting a motion and memorandum with respect to the DMA privilege log, responding to written discovery concerning the named plaintiffs, accompanying experts on nursing home tours, taking one deposition, and "preparing one expert witness for cross-examination at the trial." Third Supp. Engel Aff., ¶ 4 (P. Ex. 11). Mr. Engel's time sheets, however, demonstrate that a large percentage of his entries show duplication of effort (i.e. conferences with co-counsel, including travel; reading ("reviewing") and revising materials created by others) which only partially account for such a high aggregation of hours.[7] See Maislen Aff., Ex. E. Because Mr. Engel's time is, on its face, excessive, defendants urge the Court to assign a reasonable number of hours for his peripheral involvement in this case by reducing his compensable time by 60%. See Metropolitan District Commission, 847 F. 2d at 16 & n.4 (approving district court award assigning values to tasks needed to be performed by competent counsel).

Mr. Belin seeks fees for 145 hours, even though his only individual contribution to the

---

[7] Moreover, Mr. Engel should get no credit for his 40 "omitted" hours because he does not explain what the omitted activities are.

11

litigation was to examine one witness and cross examine another witness at the November 2001 evidentiary hearing. Belin Aff., ¶ 11 (P. Ex. 8). Otherwise, Mr. Belin's time is entirely duplicative of other counsel.   In describing his role in the case, Belin stated that he "consulted on legal strategy," "supervised and directed" one Foley Hoag associate and one paralegal in discovery matters (including "consulting on" and editing discovery motions), and that he "helped edit" other documents, including "reports of certain plaintiffs' experts" and the post-trial findings of fact and brief. Belin Aff., ¶¶ 9, 10, 12.[8]  Indeed, page after page of Mr. Belin's time sheets identify only telephone conferences and review of other people's work product – but no original or individual contribution to the case. See Maislen Aff., Ex. D (setting out Belin entries for reviewing correspondence or memoranda, or revising other attorneys' work).  Given that the case was already staffed with attorneys such as Mr. Schwartz with deep expertise in disabilities law,[9] the plaintiffs are not entitled to additional fees for Mr. Belin's consultative and supervisory activities. See Guckenberger, 8 F. Supp.2d at 108 (declining to award any fees to attorney who "served largely as a sounding board in meetings, and who indicated that a substantial part of his work on the case was advisory).  The Court should only award fees for the time Mr. Belin devoted to preparing for his witness examinations at the hearing, and conducting thoses examination. See McMillan v. Massachusetts Soc'y for the Prevention of Cruelty to Animals, 140 F.3d 288, 311 n. 18 (1st Cir. 1998) (affirming district court's total elimination of hours spent by one attorney's

---

[8]   As to the implementation and monitoring work, Belin provided "limited assistance on discrete implementation tasks related to negotiation and litigation." Third Supp. Schwarz Aff., ¶ 3.

[9]   Mr. Belin has general litigation experience, but no particular civil rights or disabilities experience. Belin Aff., ¶¶ 2-4.

"consulting with" the trial attorney about the case); <u>Hart v. Bourque</u>, 798 F.2d 519, 522-23 (1st

Cir. 1986).

Mr. Laski's time is harder to evaluate, as he usually only recorded very general

descriptions of tasks that are inadequate to determine the reasonableness of the time spent. <u>See</u>

Pl. Ex. 17. Because the burden of documenting the hours spent falls on the fee applicant, <u>Hensley</u>

<u>v. Eckerhart</u>, 461 U.S. at 437, the difficulties caused by Mr. Laski's record-keeping should not

enure to plaintiffs' benefit. Nonetheless, although Mr. Schwartz states that Mr. Laski was

"assigned specific responsibilities" for particular components of the "litigation plan," it is

apparent that Laski devoted substantial amounts of time to meetings and conferences on general

subjects (such as attorneys' fees and MetroWest) in which other of plaintiffs' attorneys also

participated, and to review and revision of other attorneys' work. Pls.' Ex. 17, pages 1-11, 19-22.

His time appears to have been devoted to particular tasks only in the days immediately before the

November 2001 evidentiary hearing. Pls.' Ex. 17, pages 12-17. Otherwise, Mr. Laski's

involvement in the case appears to have been largely consultative, and duplicative of other

counsel. As such, defendants urge that a substantial reduction of Mr. Laski's time is appropriate.

> ### D.     Much of the Time Submitted for Paralegal Marcia Boundy is for Non-Compensable Secretarial Work and the Remainder of Her Time is Excessive.

Plaintiffs seek reimbursement for an extraordinary number of hours billed by paralegal

Marcia Boundy – 1,629 hours at $75 per hour for a total fee of $122,216 (not including travel).

Ms. Boundy's activities in this case do not, however, warrant such a large fee. Ms. Boundy was

responsible for "obtaining and reviewing all documents concerning compliance with the

Settlement Agreement, obtaining and preparing client records for the experts, coordinating expert

reviews. and combing the [four day] trial record in the development of the Findings of Fact."
Schwartz Aff., ¶ 9. See Boundy Aff., ¶¶ 9-26.[10]

It is impossible to discern from the general entries that appear throughout Ms. Boundy's
time records what, if any, contribution her activities made to this case. See Tennessee Gas
Pipeline v. 104 Acres of Land, 32 F.3d 632, 634 (1st Cir. 1994) (fee applicants must submit "a
full and specific accounting of the tasks performed"). What *is* apparent is that on many days Ms.
Boundy was simply "on the clock" for substantial amounts of time, and exercised virtually no
billing judgment in excluding non-compensable time. Page after page of her time sheets contain
entries for clerical and secretarial work that is not compensable. See Maislen Aff., Ex. H
(identifying clerical or secretarial entries totaling an estimated 372 hours).[11] No time should be
allowed – even for paralegals – for non-legal, clerical/secretarial work such as photocopying,
delivering or mailing documents, performing office filing, making travel arrangements, or
scheduling meetings for others. Reynolds, 567 F.2d at 1167 (time spent on work that could be
performed by nonlawyers properly disallowed); Marsh v. Digital Equipment Corp., 699 F. Supp.

---

[10] Ms. Boundy's time is submitted in addition to the time of a second paralegal, Joanne
McLaughlin, who was "responsible for analyzing all data on specialized services provided by the
defendants in electronic format, for maintaining logs and data on all documents produced by the
defendants, and for coordinating and preparing trial exhibits." Schwartz Aff., ¶ 9. Although by
this description Ms. McLaughlin's contribution to the case appears comparable to Ms. Boundy's,
plaintiffs' seek approximately $95,000 less in fees for Ms. McLaughlin.

[11] As examples: on January 2, 2001, her entry of 6.3 hours is for "filing, xeroxing
incoming records, sample updated records;" on January 25, 2001, her entries of 3.4 hours are for
"drop off medical/nursing records at Copy Cat; fax requests, authorizations to three nursing
facilities; xerox, filing incoming records from sample class members;" on June 13, 2001, her
entry of 3 hours is "label, assemble classmembers' files received from [various sources]." Pl. Ex.
16 and Maislen Aff., Ex. H. As other examples, on July 11 and 12, 2001, Ms. Boundy billed 15
hours for telephone calls to schedule expert and attorney visits to nursing homes and day
habilitation centers.

1411, 1414 (D. Ariz. 1988) (disallowing time spent meeting a witness at the airport and taking her

to dinner); Spell, 852 F.2d at 768 (disallowing time spent by paralegal on secretarial-type

services); Trimper v. City of Norfolk, 58 F.3d 68, 76 (4th Cir. 1995) (disallowing time spent

photocopying and faxing documents), cert. denied, 516 U.S. 997 (1996).

In addition, Ms. Boundy's time records are unreliable. For example, on April 8, 2002, she

billed *fifty-five (55) hours* for "file management" (apparently removing files from one location and

putting them in storage) and then, curiously, entered an additional 2 hours on the same day (also

for "file management") at "no charge." Pl. Ex. 16. As another example, on October 26, 2001, she

billed 11.40 hours for a "telephone conference call with counsel to discuss trial strategy, etc."

For the reasons above, Ms. Boundy's time should be reduced by 75%, after which her

submission would still yield 407 hours – or more than 10 weeks full time – and amount to a fee of

$30,554.

## II.   UNDER BUCKHANNON, THE PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS' FEES FOR ACTIVITIES RELATED TO MONITORING AND IMPLEMENTING THE SETTLEMENT AGREEMENT.

In their third fee request (now part of the pending consolidated request), the plaintiffs seek

fees in the amount of $75, 162, exclusively for time devoted to monitoring implementation of the

Settlement Agreement and related activities during the period January 1, 2001, to May 31, 2001.

See Pl. Reply Brief in Sup. of Mot. for Third Award of Attorneys' Fees and Costs, at 1 (docket

no. 352). In addition, the plaintiffs' fourth request for attorneys' fees also includes time for

monitoring – wholly unrelated to the specialized services issue – although it does not break out

such time separately. Such monitoring work is not compensable, because plaintiffs are not

15

"prevailing parties" as to such work under the Supreme Court's holding in <u>Buckhannon Board &</u>
<u>Care Home, Inc. v. West Virginia Dep't of Health & Human Resources</u>, 532 U.S. 598 (2001), and
the Settlement Agreement does not stipulate that plaintiffs are entitled to fees for monitoring
work.

In evaluating plaintiffs' first fee application the Court did not determine whether plaintiffs
were "prevailing parties" as to work done prior to the Court's approval of the Settlement
Agreement because the parties stipulated therein that plaintiffs were entitled to reasonable
attorneys' fees for work performed prior that date. <u>Rolland v. Cellucci</u>, 106 F. Supp.2d at 131;
Ag't, ¶ 34.[12]   Prior to <u>Buckhannon</u>, courts in the First Circuit accepted the so-called catalyst theory
to support a claim for attorneys' fees where the opposing party changed the conduct at issue when
confronted with litigation. <u>See</u>, <u>e.g.</u>, <u>New Hampshire v. Adams</u>, 159 F.3d 680, 685-86 (1st Cir.
1998). In <u>Buckhannon</u>, the Supreme Court limited "prevailing party" status to those who succeed
in obtaining an "enforceable judgment[] on the merits [or a] court-ordered consent decree[,]" 532
U.S. at 604, declining to extend the definition of prevailing party to settlements that "do not entail
the judicial approval and oversight involved in consent decrees." <u>Id.</u> at 604, n. 7. In so holding,
the Court "consigned the catalyst theory to the scrap heap." <u>New England Reg'l Council of</u>

---

[12]   By agreeing that plaintiffs were entitled to fees for work performed prior to the
Court's approval of the Settlement Agreement (Ag't, ¶ 34), defendants did not waive the right to
contest plaintiffs' entitlement to any post-settlement fees. In particular, the Agreement does not
provide that plaintiffs are entitled to any monitoring fees, and any claim for such fees must thus
be based upon the then-existing facts and law (Ag't, ¶ 32). <u>Compare</u> <u>Joseph A. v. New Mexico</u>
<u>Dep't of Human Services</u>, 28 F.3d 1056, 1059 (10th Cir. 1994) (rejecting argument that
defendants are collaterally estopped from challenging plaintiffs' entitlement to post-judgment
fees by their failure to appeal earlier fee awards); <u>Willie M. v. Hunt</u>, 732 F.2d 383, 385 (4th Cir.
1984) (finding that, "[a]lthough plaintiffs were prevailing parties in the underlying litigation so
as to justify the first fee award, . . . it is manifest that they were not the prevailing parties in the
[post-judgment] litigation . . . for which the second fee award was made").

Carpenters v. Kinton, 284 F.3d 9, 30 (1st Cir. 2002)..

Following Buckhannon, the First Circuit found that prevailing party status for entitlement to attorney's fees required that a party obtain some relief by a court, either in a judgment on the merits or in a court-ordered consent decree. See Kinton, 284 F.3d at 26 ("The district court did not compel Massport to adopt the regulations. Under the Buckhannon rule, that ends the matter. Because the district court entered no explicit order compelling, or even leading to, Massport's adoption of the regulations, we cannot say that the district court's refusal to award attorneys' fees constituted an abuse of discretion."). See also Richardson v. Miller, 279 F.3d 1, 4-5 (1st Cir. 2002); Oil, Chemical & Atomic Workers Int'l Union v. Department of Energy, 288 F.3d 452, 457 (D.C. Cir. 2002).

Here, plaintiffs obtained neither a judgment on the merits nor a court-ordered consent decree. To the contrary, at the time when the Court approved the Agreement, the Court took no action on defendants' pending motion for summary judgment, and the Agreement expressly provides that it is not a judicially enforceable consent decree. Id., ("Ag't"), ¶ 27 ("[T]he terms of this Agreement shall not be enforceable by contempt or by a breach of contract action in state or federal court.").[13] Plaintiffs thus do not qualify as prevailing parties under Buckhannon. See

---

[13]    This Court has described the Settlement Agreement as follows:

By its own terms, the Settlement Agreement, although approved by the court, is "not . . . enforceable by contempt or by a breach of contract action in state or federal court." (Settlement Agreement ¶ 27.) Rather, the agreement obligates Plaintiffs to first "notify Defendants of any alleged noncompliance" and to "request a meeting for the purpose of attempting to resolve the problems identified." (Id. ¶ 30.) If the meeting fails to resolve the issue, the parties are obligated to engage in at least two days of mediation. (Id. ¶ 31.) Only if mediation fails may Plaintiffs "file a motion with the Court seeking a judicial determination that Defendants are not substantially complying with the Agreement." (Id. ¶ 32.) The motion cannot be filed until at least thirty days have passed from Plaintiffs'

Smyth v. Rovero, 282 F.3d 268, 279-282 (4th Cir. 2002) (discussing difference between consent decrees and settlements for prevailing party analysis under Buckhannon).

In accordance with Buckhannon, the First Circuit held that a party did not qualify as a prevailing party where the litigation brought by the party "pressured [an agency] to adopt new regulations." Kinton, 284 F.3d at 30. Similarly, the District of Columbia Circuit held that a judicial order approving the terms of a parties' settlement agreement was not the requisite judicial relief to confer a party with prevailing party status. Oil, Chemical & Atomic Workers Int'l Union, 288 F.3d at 457-58. That reasoning applies here, even though some courts in other circuits, when faced with the specific facts and circumstances regarding a settlement, found that the court's approval of the settlement, when combined with the retention of jurisdiction to enforce the agreement, were sufficient judicial relief to qualify the movant as a prevailing party for purpose of a fee award. Cf. American Disability Ass'n, Inc. v. Chielarz, 289 F.3d 1315, 1317 (11th Cir. 2002); National Coalition for Students with Disabilities v. Bush, 173 F. Supp.2d 1272, 1278 (N.D. Fla. Aug. 7, 2001). Here, by contrast, the Court did not retain jurisdiction to enforce the Agreement, because the Agreement expressly states that it is not enforceable by contempt or by a breach of contract action in court. Ag't, ¶ 27. Instead, the Court retained jurisdiction to reopen the case and determine whether plaintiffs were entitled to relief based upon the *then-existing* facts and law, Id., ¶ 32, but not to enforce the Agreement by contempt. Such provisions do not amount

---

initial notification to Defendants. (See id. ¶ 30.) If the court thereafter finds "that Defendants are not substantially complying with the Agreement[,] . . . it may lift the stay otherwise imposed under paragraph [twenty-eight] and the Plaintiffs may seek injunctive and other relief based upon the then existing facts and law." (Id. ¶ 32.)

Rolland v. Cellucci, 138 F. Supp.2d 110, 112 (D. Mass. 2001). See also Rolland v. Cellucci, 191 F.R.D. 3, 8 (D. Mass. 2000).

to the requisite judicial relief to confer plaintiffs with prevailing party status.

In ruling on the second fee application, the Court stated that it "will allow fees for post-judgment monitoring without requiring plaintiffs to demonstrate that they 'prevailed' in that effort." Rolland v. Cellucci, 151 F. Supp.2d at 155. At that time, however, the defendants had not opposed awarding fees for reasonable post-settlement monitoring. Id. at 153. Similarly, prior to Buckhannon, some courts held in the context of Section 1988 that post-judgment monitoring of a consent decree is a compensable activity for which counsel is entitled to reasonable fees. See Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 559 (1986) and cases cited. But, under Buckhannon, plaintiffs are not prevailing parties with respect to monitoring work done after the parties reached a settlement, given that the settlement agreement *itself* is not judicially enforceable. The Court should therefore decline to award any fees for the time devoted to monitoring implementation of the Settlement Agreement.

**III.    EVEN IF THE COURT DETERMINES THAT TIME DEVOTED TO MONITORING IS COMPENSABLE, THE HOURS CLAIMED IN PLAINTIFFS' THIRD REQUEST ARE EXCESSIVE, AND SHOULD BE SUBSTANTIALLY REDUCED.**

If compensable at all, post-judgment work "must be 'useful and of a type ordinarily necessary' to secure the final result obtained." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 561 (1986); see also Stewart v. Gates, 987 F.2d 1450, 1452 (9th Cir. 1993). Otherwise, "[m]issing the refining fire of the basic litigation, plaintiffs' attorneys may slip into a mode of spending too much time on too many matters." Brewster v. Dukakis, 786 F.2d 16, 18 (1st Cir. 1986). The defendants have already submitted to this Court a memorandum urging that, even if compensable, the hours claimed in the plaintiffs' third request for attorneys' fees for monitoring and implementation are excessive. See Defendants' Further Opposition to Plaintiffs' Motion for a Third Award of Attorneys' Fees and Costs, dated October 10, 2002 (docket no. 350). Defendants rely upon and incorporate those arguments in this memorandum by reference, and urge the Court to make the reductions identified by the defendants with respect to the third fee request, if such amounts are deemed compensable at all. See id. at 11 (identifying specific reductions for each of plaintiffs' counsel).

## CONCLUSION

For all of the above reasons, this Court should award no more than $546,892 in attorneys' fees for the period from January 1, 2001, through December 31, 2002, calculated in accordance with the tables in Attachment A, hereto.

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

William W. Porter, BBO #542207
Assistant Attorney General
Government Bureau
One Ashburton Place, Room 2019
Boston, Massachusetts 02108-1698
(617) 727-2200

Dated:  May 30, 2003

21

## ATTACHMENT A

| | Hrs claimed | Less non-compensable[14] | Sub-total | % Reduction | Net Hours | Rate | Lodestar |
|---|---|---|---|---|---|---|---|
| Schwartz | 909.40 | 90.8 | 818 | 15 | 695 | $275.00 | $191,208 |
| Costanzo | 1091.50 | 71.2 | 1020 | 20 | 816 | $205.00 | $167,280 |
| Toner | 177.00 | | 177 | 15 | 150 | $160.00 | $24,072 |
| Boundy | 1629.55 | 102.5 | 1528 | 75 | 382 | $75.00 | $28,650 |
| Engel | 277.95 | 36.15 | 242 | 60 | 97 | $205.00 | $19,844 |
| Laski | 292.10 | 10.8 | 281 | 35 | 182 | $275.00 | $50,228 |
| Belin | 145.50 | 16.8 | 129 | 60 | 52 | $257.50 | $13,416 |
| Hatrick | 597.95 | | 598 | 60 | 239 | $120.00 | $28,704 |
| McLaughin | 267.10 | 6.3 | 261 | 10 | 235 | $100.00 | $23,490 |

TOTAL: $ 546,892

---

[14] These are the amounts claimed for monitoring and implementation in plaintiffs' third request for attorneys' fees.

LORETTA ROLLAND, et al.

    Plaintiffs,

v.

MITT ROMNEY, et al.

    Defendants.

Civil Action No. 98-30208-KPN

## AFFIDAVIT OF ANDREA H. MAISLEN

Andrea H. Maislen, being duly sworn, deposes and says:

1. I am an assistant general counsel in the Office of the General Counsel of the Department of Mental Retardation. I have served in this capacity since September 4, 2001. I have been a member of the Massachusetts bar since 1982.

2. I have personal knowledge of the facts stated herein, except where indicated and as to those facts I believe them to be true.

3. I reviewed all of the billing records submitted by the plaintiffs' attorneys in connection with their fee petition. I reviewed all of them line by line from beginning to end. I then reviewed each submission looking separately at various categories, including: time billed on fee matters; time billed for travel; time billed for work on the post-trial "Findings of Fact"; time billed on research, drafting and conferring on the post-trial brief; time billed on internal conferences and conference calls where there were more than two lawyers participating; time billed by Mr. Belin "reviewing and revising" the work of other attorneys; time billed by Ms. Hatrick for supervising the work of summer associates; and time billed for depositions in which more than two lawyers participated.

4. For each of the categories described in paragraph 3, I created a chart which recorded date, time billed, description of the work done, whether the work was recorded along with other tasks ("block billing"); and, if there was block billing, what percentage of the time I allocated to the tasks recorded on the chart. These charts are attached hereto as Exhibits A – H.

1

5. In allocating time billed as described in paragraph 4, I took the total number of tasks listed and divided that into the total amount of time recorded to arrive at the amount I allocated to the particular task reflected on each chart.

6. In addition I reviewed calculations done by Peter Mimmo, a paralegal in the Office of the General Counsel, regarding time billed on expert tours and time billed by Ms. Boundy for secretarial or clerical work.

Signed under the pains and penalties of perjury this 30th day of May, 2003.

_Andrea H. Maislen_

Andrea H. Maislen

# EXHIBIT A

SJS

*This worksheet analyzes the internal conferences and conference calls Attorney Steven Schwarz participated in with two or more lawyers. The worksheet calculates the total number of hours Attorney Schwarz devotes to these conferences, multiplies it by his compromised hourly rate, and generates a "lodestar."*

Compromised Hourly Rate:
$275.00

| Date | Entry Billing | Entry | Hours Billed | Approx. Hours | Amount |
|---|---|---|---|---|---|
| 12-Jan-01 | | Conf w/ Dick, Matthew, & Cathy | 0.9 | | $247.50 |
| 2-Apr-01 | | Telephone conf. W/ Marcia, Cathy, Matthew, Frank and Dick to discuss next steps | 1.5 | | $412.50 |
| 6-Jun-01 | | Telephone conf. Call with co-counsel to discuss motion on Tom York and response, active treatment review and schedule motion for further relief | 1.3 | | $357.50 |
| 11-Jun-01 | | Telephone conference call with cocounsel to discuss active treatment review | 0.7 | | $192.50 |
| 19-Jun-01 | | Telephone conf. Call w/ co counsel to discuss joint active treatment review | 1.2 | | $330.00 |
| 2-Jul-01 | | Telephone conf. Call with cocounsel to discuss active treatment review | 1.2 | | $330.00 |
| 9-Jul-01 | | Telephone conf. Call w. Cathy, Chris, Dick and Matthew to discuss strategy on dealing with AG's office on active treatment | 0.8 | | $220.00 |
| 18-Jul-01 | | Conference w/ co-counsel re: DMR proposal and list of expert to submit to defendants | 1 | | $275.00 |

| Date | Description | Hours | | Amount |
|---|---|---|---|---|
| 20-Jul-01 | Telephone conference call with co-counsel to discuss defendants' candidate | 0.7 | | $192.50 |
| 23-Jul-01 | Conf. With cocounsel to prepare for hearing | 0.5 | | $137.50 |
| 24-Jul-01 | Conf with Cathy and Frank re: joint expert | 0.2 | | $55.00 |
| 26-Jul-01 | Telephone conf. To Frank, Cathy re: appeal of fee decision | 0.4 | | $110.00 |
| 11-Aug-01 | Telephone conf. Call with cocounsel to discuss response to discovery status of expert review and defendants' response to motion | 1.8 | | $495.00 |
| 5-Sep-01 | Conf. W/ counsel re: defendants' response to discovery, motion to prohibit [etc] | 4.2 | | $1,155.00 |
| 21-Sep-01 | Conf. W/ counsel to review hearing & order | 0.4 | | $110.00 |
| 25-Sep-01 | Conf. W/ co-counsel re: depositions, motions to compel [etc] | 2.5 | | $687.50 |
| 2-Oct-01 | Telephone conference call w/ Tom York, Cathy, Dick to discuss supplemental answers to interrogatories | 0.7 | | $192.50 |
| | Telephone conf. Call with Frank & Cathy to discuss compromise on extension. | 0.45 | 1/2 | $123.75 |
| 9-Oct-01 | Telephone conf. Call with co-counsel to discuss defendants' legal strategy [etc] | 1.1 | | $302.50 |
| 15-Oct-01 | Telephone conf. W/ co-counsel to discuss defendants' expert report | 1.2 | | $330.00 |
| 16-Oct-01 | Telephone conf. Call w/ co-counsel to discuss supplemental scheduling order & expert deposition strategy | 1.4 | | $385.00 |
| 26-Oct-01 | Telephone conf. Call w/ co counsel to discuss pending motions | 1.4 | | $385.00 |
| 29-Oct-01 | Telephone conf. Call w/ co counsel to discuss trial strategy, witnesses, exhibits, & further motions | 1.5 | | $412.50 |
| 1-Nov-01 | Telephone conf call with co-counsel to discuss exhibits, witnesses, pretrial conference, and further motions | 1.9 | | $522.50 |

| Date | Description | Hours | Amount |
|---|---|---|---|
| 2-Nov-01 | Telephone conf. Call with cocounsel to discuss trial exhibits, witnesses trial plan | 1.3 | $357.50 |
| 4-Nov-01 | Telephone conf. Call with co-counsel to discuss affidavits, exhibits, witnesses, cut off date, opening & trial assignments | 1.1 | $302.50 |
| | Conf. With co-counsel re; strategy for motion in limine | 0.4 | $110.00 |
| 19-Nov-01 | Telephone conf. Call with co-counsel to discuss outline of assignments for proposed findings and legal memo | 1.2 | $330.00 |
| 23-Jan-02 | Conf. W. co-counsel re: strategies for monitoring and enforcing settlement agreement | 2.5 | $687.50 |
| | Prepare for hearing with counsel | 1 | $275.00 |
| 16-May-02 | Telephone conf call with co-counsel to discuss implementation of court order | 1.3 | $357.50 |
| 31-Jul-02 | Conf w/ co-counsel to prepare for hearing on active treatment policy | 0.5 | $137.50 |
| | Conf w/ co-counsel re; appeals court brief monitoring of community placement | 1.1 | $302.50 |
| 13-Sep-02 | Telephone conf. Call with co-counsel to discuss response to motion to strike [etc] | 0.9 | $247.50 |
| | Grand Total | 37.85 | |

**Costanzo**

*This worksheet analyzes the internal conferences and conference calls Attorney Cathy Costanzo participated in with two or more lawyers. The worksheet calculates the total number of hours Attorney Costanzo devotes to these conferences, multiplies it by her compromised hourly rate, and generates a "lodestar."*

Compromised Hourly Rate:
$205.00

| Date | Biller | Billing Entry | Hours | Billing Rate Apportioned | Amount |
|------|--------|---------------|-------|--------------------------|--------|
| 26-Jan-01 | | Telephone conf w/ cocounsel to discuss strategy | 1 | | $205.00 |
| 2-Apr-01 | | Telephone conference call w/ Steven, Marcia, Matthew, Frank & Dick to discuss next steps | 1.5 | | $307.50 |
| 14-May-01 | | Telephone conf call w/ cocounsel re: strategy | 1 | | $205.00 |
| 5-Jun-01 | | Telephone conference call with cocounsel to discuss scheduling conference | 1.3 | | $266.50 |
| 11-Jun-01 | | Conference with Matthew, Steve, Marcia re: next steps, research | 0.3 | | $61.50 |
| | | Telephone conference with cocounsel to discuss hearing, defs proposal | 0.7 | | $143.50 |
| 19-Jun-01 | | Telephone conference call with cocounsel to discuss joint active treatment review | 1.2 | | $246.00 |
| 21-Jun-01 | | Conference with cocounsel re: active treatment standard | 0.4 | | $82.00 |

| Date | Description | Hours | Amount |
|---|---|---|---|
| 2-Jul-01 | Telephone conference call with cocounsel to discuss strategy | 1.2 | $246.00 |
| 9-Jul-01 | Telephone conference call with cocounsel to discuss strategy for approaching AG & defs on active treatment | 0.8 | $164.00 |
| 16-Jul-01 | Conference w/ Frank & Steve re: joint expert | 0.2 | $41.00 |
| 18-Jul-01 | Telephone conference call with cocounsel to discuss strategy | 1 | $205.00 |
| 20-Jul-01 | Telephone conference call with cocounsel | 0.7 | $143.50 |
| 23-Jul-01 | Telephone conference call with cocounsel | 0.7 | $143.50 |
|  | Conference with cocounsel to prepare for hearing | 0.7 | $143.50 |
|  | Conference w/ cocounsel re: sampling process | 0.7 | $143.50 |
| 24-Jul-01 | Conf w/ Steve & Frank re: joint expert | 0.2 | $41.00 |
| 2-Aug-01 | Conf with Frank & Steve re: call with Lyn Rucker | 0.3 | $61.50 |
| 13-Aug-01 | Telephone conf call with cocounsel to discuss discovery, strategy, tours | 1.8 | $369.00 |
| 5-Sep-01 | Conference with cocounsel re: strategy, next steps, defs response to discovery, motion to prohibit use of client information, depositions and expert reports and trial | 4.2 | $861.00 |
| 21-Sep-01 | Conference w/ cocounsel re: strategy for hearing | 0.5 | $102.50 |
|  | Conference with cocounsel re: order and hearing | 0.5 | $102.50 |
| 25-Sep-01 | Conference with co-counsel re: strategy, assignments, and trial prep. | 2.5 | $512.50 |

| Date | Description | Hours | Amount |
|---|---|---|---|
| 2-Oct-01 | Telephone conference call with Tom York, Steve, Dick Belin, to discuss supplemental answers to interrogatories | 0.7 | $143.50 |
| | Telephone conference call with Steve & Dick to discuss compromise on motion to extend | 0.4 | $82.00 |
| 15-Oct-01 | Telephone conference call with cocounsel to discuss division of responsibilities, discovery | 1.2 | $246.00 |
| 16-Oct-01 | Telephone conference call with cocounsel to discuss supplemental scheduling order of expert | 1.4 | $287.00 |
| 22-Oct-01 | Telephone conference call with Kristi & Dick to discuss Daubert motion | 0.2 | $41.00 |
| 23-Oct-01 | Telephone conference call with Kristi & Matthew | 0.2 | $41.00 |
| 25-Oct-01 | Telephone conference call with Leo Sarksissian and Joe to discuss strategy | 1.3 | $266.50 |
| 26-Oct-01 | Telephone conference call w/ cocounsel to discuss trial strategy, division of work | 1.4 | $287.00 |
| 29-Oct-01 | Telephone conference with cocounsel to discuss trial plan | 1.5 | $307.50 |
| 1-Nov-01 | Telephone conference with cocounsel to discuss strategy | 1.9 | $389.50 |
| | Telephone conference call w/ cocounsel to discuss exhibits, witnesses, pretrial conference & further motions | 1.9 | $389.50 |
| 2-Nov-01 | Telephone conference call w/ cocounsel to discuss strategy, trial assignments, witnesses | 1.9 | $389.50 |
| 4-Nov-01 | Telephone conference with cocounsel to discuss defs' proposed exhibits, objections, fact cut off | 1.1 | $225.50 |

| Date | Yes | Conference with cocounsel | 1.3 | 1/3 | Amount |
|---|---|---|---|---|---|
| 6-Nov-01 | Yes | Conference with cocounsel | | | $266.50 |
| 19-Nov-01 | | Telephone conference w/ cocounsel to discuss structure of findings of fact and legal memo | 1.2 | | $246.00 |
| 23-Jan-02 | | Conference w/ cocounsel re: preparation for hearing | 1 | | $205.00 |
| | | Conference w/ cocounsel re: strategy on diversion community placements independent expert | 3 | | $615.00 |
| 6-Mar-02 | | Conference w/ Matthew, Frank and Steve re: strategy on fee petition | 0.2 | | $41.00 |
| 16-May-02 | | Telephone conf. w/ cocounsel to discuss strategy, fees, order, implementation | 1.3 | | $266.50 |
| 20-Jun-02 | | Telephone conference with cocounsel to discuss DMR draft policy, meeting with DMR | 0.7 | | $143.50 |
| 31-Jul-02 | | Conf w/ cocounsel to prepare of prehearing on active treatment policy | 0.5 | | $102.50 |
| | | Conf w/ cocounsel re: appeals brief | 1.1 | | $225.50 |
| 13-Sep-02 | | Telephone conf call w/ cocounsel to discuss response to motion to strike | 0.9 | | $184.50 |
| | | GRAND TOTAL | 44.5 | | $9,143.00 |

Belin

*This worksheet analyzes the internal conferences and conference calls Attorney Richard Belin participated in with two or more lawyers. The worksheet calculates the total number of hours Attorney Belin devotes to these conferences, multiplies it by his compromised hourly rate, and generates a "lodstar."*

Compromised Hourly Rate:
$257.50

| Date | Attorney Billing | Time Entry Description | Hours | Billing Apportioned | Amount |
|------|------------------|------------------------|-------|---------------------|--------|
| 6-Jun-01 | Yes | Telephone conference w/ Schwarz, et al re York intervention court hearing and related issues | 0.5 | 1/3 | $128.75 |
| 11-Jun-01 | Yes | Telephone conference w/ Schwarz, Lask et al reviewing ct scheduling order | 0.3 | 1/3 | $77.25 |
| 19-Jun-01 | | Telephone conference w/ Schwarz, Costanzo, et al | 0.8 | | $206.00 |
| 9-Jul-01 | | Telephone conference with Schwarz et al regarding settlement negotiation issues | 0.6 | | $154.50 |
| 18-Jul-01 | | Telephone conf w/ Schwarz et al. | 0.6 | | $154.50 |
| 20-Jul-01 | | Telephone conf with Costanzo et al re: expert issues | 0.6 | | $154.50 |
| 13-Aug-01 | | Telephone conf w/ Schwarz et al re expert & discovery issues and hearing prep | 2.3 | | $592.25 |
| 21-Sep-01 | Yes | Telephone conference with Schwarz and Hatrick | 0.2 | 1/2 | $51.50 |
| 25-Sep-01 | Yes | Meeting w/ Schwarz et al re: discovery issues and trial planning | 1.1 | 1/3 | $283.25 |

| Date | | Description | | | Amount |
|---|---|---|---|---|---|
| 2-Oct-01 | | With Hatrick & telephone conf w/ Schwarz et al re: discovery | 1.3 | | $334.75 |
| 15-Oct-01 | Yes | Telephone conf w/ Schwarz et al. | 0.3 | 1/4 | $77.25 |
| 16-Oct-01 | Yes | Telephone conf w/ Schwarz et al | 0.7 | 1/3 | $180.25 |
| 24-Oct-01 | Yes | Telephone conference w/ Costanzo & Schwarz | 0.25 | 1/7 | $64.38 |
| 26-Oct-01 | Yes | Telephone conference with Schwarz et al. | 0.65 | 1/2 | $167.38 |
| 29-Oct-01 | Yes | Telephone conf with Schwarz et al. | 1.5 | 1/2 | $386.25 |
| 1-Nov-01 | Yes | Telephone conf with Schwarz et al. | 0.76 | 1/5 | $195.70 |
| 19-Nov-01 | Yes | Telephone conf with Schwarz et al. | 0.6 | 1/3 | $154.50 |
| 16-May-02 | Yes | Prep for and participate w/ conf call w/ S. Schwarz et al re: next steps | 1.1 | 9/10 | $283.25 |
| 13-Sep-02 | Yes | Telephone conf w/ S. Schwarz et al re: issues | 0.7 | 1/3 | $180.25 |

Hatrick

*This worksheet analyzes the internal conferences and conference calls Attorney Kristi Hatrick participated in with two or more lawyers. The worksheet calculates the total number of hours Attorney Hatrick devotes to these conferences, multiplies it by her compromised hourly rate, and generates a "lodestar."*

Compromised Hourly Rate:
$120.00

| Date | | Entry | Hours | Proportioned | Amount |
|---|---|---|---|---|---|
| 5-Sep-01 | Yes | Met with team to review def's responses to discover [etc] | 2.1 | 1/3 | $252.00 |
| 25-Sep-01 | Yes | Team mtg w/ S. Schwarz, C. Costanzo, R. Belin, F. Laski, M. Engel | 2.1 | 1/3 | $252.00 |
| 2-Oct-01 | Yes | Conf call re: answers to Ints, scheduling with D. Belin, S. Schwarz, C. Costanzo & T. York | 2.6 | 1/3 | $312.00 |
| 15-Oct-01 | Yes | Conf call with team | 0.8 | 1/4 | $96.00 |
| 16-Oct-01 | Yes | Participated in conf call with team re: motion in limine | 2.9 | 1/2 | $348.00 |
| 17-Oct-01 | Yes | Conf call w/ M. Engel and D. Belin re: motion in limine | 2.4 | 1/3 | $288.00 |
| 22-Oct-01 | Yes | Conf call w/ R. Belin, S. Schwarz, M. Engel, re: Motion in limine; conf call w/ R. Belin & C. Costanzo | 4.3 | 1/2 | $516.00 |
| 26-Oct-01 | | Team conf call | 1 | | $120.00 |
| 29-Oct-01 | Yes | Conf call w/ Team to discuss trial prep ans assignments | 3.9 | 1/3 | $468.00 |
| 2-Nov-01 | Yes | Conf call with team re: pretrial conf | 1.1 | 1/3 | $132.00 |
| 19-Nov-01 | Yes | Team conf call re: post trial briefing | 2.2 | 1/3 | $264.00 |

| Date | | Description | | | Amount |
|---|---|---|---|---|---|
| 16-May-02 | | Team conf call re: Magistrate Neiman's decision strategy going forward, etc. | 1.1 | | $132.00 |
| 20-Jun-02 | Yes | Team conf call w/ Schwarz, Laski, Engel, Costanzo | 0.3 | 1/4 | $36.00 |
| 13-Sep-02 | Yes | Discussed with S. Schwarz, F. Laski, C. Costanzo and R. Belin pros & cons of making Section 1292 jurisdiction argument with brief | 1.1 | 1/3 | $132.00 |
| | | Grand Totals | | | $2,088.00 |

Engel

*This worksheet analyzes the internal conferences and conference calls Attorney Matthew Engel participated in with two or more lawyers. The worksheet calculates the total number of hours Attorney Engel devotes to these conferences, multiplies it by his compromised hourly rate, and generates a "lodestar."*

Compromised Hourly Rate:
$205.00

| Date | Block Billing | Entry | Hours | Apportioned (Billing) | Lodestar (Billing) |
|---|---|---|---|---|---|
| 14-May-01 | | P conference call on AT strategy | 0.8 | | $164.00 |
| 22-May-01 | Yes | Tcs & mails w/ experts and cocounsel re: AT | 0.5 | 1/2 | $102.50 |
| 6-Jun-01 | | P conference call on AT motion | 1.3 | | $266.50 |
| 11-Jun-01 | | Conf. MB, SJS, and CBC re research | 0.3 | | $61.50 |
| | | P conference call re: experts | 0.7 | | $143.50 |
| 19-Jun-01 | | P conference all re: expert tours | 0.8 | | $164.00 |
| 2-Jul-01 | | P conference call re: SS compliance | 1.1 | | $225.50 |
| 9-Jul-01 | | P conf call re York and AG | 0.8 | | $164.00 |
| 23-Jul-01 | | P attorney pre court mtg | 0.5 | | $102.50 |
| | | P attorney conference call re: sampling methodology | 0.7 | | $143.50 |
| 13-Aug-01 | | P conf call re: discovery | 1.8 | | $369.00 |
| 15-Oct-01 | | P conf call re: expert report | 1.2 | | $246.00 |
| 26-Oct-01 | | P conf call re: trial strategy & motions | 1.4 | | $287.00 |
| 1-Nov-01 | | P cocounsel mtg on trial strategy | 1 | | $205.00 |
| 2-Nov-01 | | Trial strategy conf call | 1.3 | | $266.50 |
| 4-Nov-01 | | P conference call on trial prep | 1.1 | | $225.50 |
| | | P conf call on motion limine | 0.4 | | $82.00 |
| 8-Nov-01 | | Consult with cocounsel and time keeping | 1.5 | | $307.50 |
| 19-Nov-01 | | conference call re: post hearing, filings | 1.2 | | $246.00 |

| Date | Description | Hours | Amount |
|---|---|---|---|
| 23-Jan-02 | P strategy mtg re compliance issues | 2.5 | $512.50 |
| 6-Mar-02 | T C ["telephone conference"], FL SJS, and CEC re: feed petition | 0.2 | $41.00 |
| 20-Jun-02 | Conf call re: active treatment policy | 0.7 | $143.50 |
| 31-Jul-02 | Pre-court meeting | 0.5 | $102.50 |
| | Post court meeting on hearing of 1st Circuit | 1.1 | $225.50 |
| | GRAND TOTAL | 19.8 | $4,059,000 |

# EXHIBIT B

This worksheet analyzes the hours charged by plaintiffs' attorneys and their support staffs relative to their work on the post trial brief. For the purposes of this worksheet, "brief", "memo", and "supplemental memo" are presumed to be synonymous. This worksheet analyzes the research, drafting and revision of the post trial brief performed after the November 2001 trial.

| Date | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1-Nov-01 | | | | | | | |
| 2-Nov-01 | | | | | | | |
| 3-Nov-01 | | | | | | | |
| 4-Nov-01 | | | | | | | |
| 5-Nov-01 | | | | | | | |
| 6-Nov-01 | | | | | | | |
| 7-Nov-01 | | | | | | | |
| 8-Nov-01 | | | | | | | |
| 9-Nov-01 | | | | | | | |
| 10-Nov-01 | | | | | | | |
| 11-Nov-01 | | | | | | | |
| 12-Nov-01 | | | | | | | |
| 13-Nov-01 | | | | | | | |
| 14-Nov-01 | | | | | | | |
| 15-Nov-01 | | | | | | | |
| 16-Nov-01 | 0.4 | | | | | 0.2 | |
| 17-Nov-01 | | | | | | | |
| 18-Nov-01 | | | | | | | |
| 19-Nov-01 | 1.6 | 1.5 | | | 1.2 | | 6.8 |
| 20-Nov-01 | 0.5 | | | | | | 2.2 |
| 21-Nov-01 | 6.3 | 1.4 | | 8 | | | 1.7 |
| 22-Nov-01 | | | | | | | |
| 23-Nov-01 | 8.3 | | | 8 | | | |
| 24-Nov-01 | 3.1 | 1.4 | | 4.5 | | | |
| 25-Nov-01 | 4.5 | 3.3 | | | | | 5 |
| 26-Nov-01 | 2.1 | | | | | | 6.4 |
| 27-Nov | 0.7 | | | 0.5 | | | 3.5 |
| 28-Nov-01 | 0.5 | 4.4 | | 2 | 2.25 | | |
| 29-Nov-01 | 0.3 | 1.9 | | | 1.25 | | 1.4 |
| 30-Nov-01 | | 0.7 | 0.2 | | | | |
| 1-Dec-01 | | | | | | | |
| 2-Dec-01 | | 3.2 | | | | | |
| 3-Dec-01 | | | | | | 0.6 | 1.2 |
| 4-Dec-01 | | 6.6 | | | | | |

| Date | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 5-Dec-01 | 1.1 | 3.9 | | | | | | |
| 6-Dec-01 | 1.2 | 0.6 | | | | | | |
| 7-Dec-01 | 0.7 | 3.5 | 1.5 | | | | | |
| 8-Dec-01 | | | | | | | | |
| 9-Dec-01 | | | | | | | | |
| 10-Dec-01 | | | 2.2 | | | | | |
| 11-Dec-01 | | | | 1 | | | | |
| 12-Dec-01 | 0.2 | | | | | | | |
| 13-Dec-01 | | | | | | | | |
| 14-Dec-01 | | 0.7 | | | | | | |
| 15-Dec-01 | | | | | | | | |
| 16-Dec-01 | | | | | | | | |
| 17-Dec-01 | | 3.9 | | | | | | |
| 18-Dec-01 | | 2.9 | | | | | | |
| 19-Dec-01 | 1.1 | | | | | | | |
| 20-Dec-01 | 1.6 | 2.1 | | | | | | |
| 21-Dec-01 | | | | | | | | |
| 22-Dec-01 | | | | | | | | |
| 23-Dec-01 | | | | | | | | |
| 24-Dec-01 | | | | | | | | |
| 25-Dec-01 | | | | | | | | |
| 26-Dec-01 | | | | | | | | |
| 27-Dec-01 | | | | | | | 0.6 | |
| 28-Dec-01 | | | | | | | | |
| 29-Dec-01 | | | | | | | | |
| 30-Dec-01 | | | | | | | | |
| 31-Dec-01 | | | | | | | 1 | |
| 1-Jan-02 | | | | | | | | |
| 2-Jan-02 | | | | | | | | 0.7 |
| 3-Jan-02 | | | | | | | | |
| 4-Jan-02 | | | | | | | | 2 |
| **TOTALS** | 34.2 | 48.3 | 3.9 | 24 | 4.7 | | 2.4 | 30.9 |
| | $275.00 | $205.00 | $75.00 | $160.00 | $205 | | $257.50 | $120.00 |
| | $9,405.00 | $9,901.50 | $292.50 | $3,840.00 | $963.50 | | $618.00 | $3,708.00 |

Page 2 of 2

# EXHIBIT C

**Findings of Fact**

*This worksheet analyzes the hours charged by plaintiffs' attorneys and their support staffs relative to the drafting and revision of the "Findings of Fact" portion of their post-trial brief. This worksheet computes the total number of hours each member of the plaintiffs' legal team devoted to the "Findings of Fact" and multiplies this figure by their respective hourly rate.*

| Date | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1-Nov-01 | | | | | | | | |
| 2-Nov-01 | | | | | | | | |
| 3-Nov-01 | | | | | | | | |
| 4-Nov-01 | | | | | | | | |
| 5-Nov-01 | | | | | | | | |
| 6-Nov-01 | | | | | | | | |
| 7-Nov-01 | | | | | | | | |
| 8-Nov-01 | | | | | | | | |
| 9-Nov-01 | | | | | | | | |
| 10-Nov-01 | | | | | | | | |
| 11-Nov-01 | | | | | | | | |
| 12-Nov-01 | | | | | | | | |
| 13-Nov-01 | | | | | | | | |
| 14-Nov-01 | | 1.3 | | | | | | |
| 15-Nov-01 | 1.2 | | | | | | | |
| 16-Nov-01 | 0.8 | 0.3 | | | | | | |
| 17-Nov-01 | | | | | | | | |
| 18-Nov-01 | | | | | | | | |
| 19-Nov-01 | 2.6 | 1.3 | 2.4 | | | | 2 | |
| 20-Nov-01 | 1.1 | 3.2 | 2.9 | 1 | | | 0.3 | |
| 21-Nov-01 | | 0.9 | 5.2 | | | | | |
| 22-Nov-01 | | | | | | | | |
| 23-Nov-01 | | | | | | | | |
| 24-Nov-01 | | | | | | | | |
| 25-Nov-01 | | | | | | | | |
| 26-Nov-01 | | | 5.1 | | | | | |
| 27-Nov | | 2 | 4.4 | 1 | | | | |
| 28-Nov | 1.2 | | 5.5 | 6 | | | | 2.8 |
| 29-Nov-01 | | 0.7 | 4.2 | | | | | 4.6 |
| 30-Nov-01 | | 0.5 | 6.8 | 3.6 | | | | 8.3 |
| 1-Dec-01 | | | | | | | | |
| 2-Dec-01 | | | | | | | | |
| 3-Dec-01 | | 0.7 | 4 | 7.5 | .3 | | | |
| 4-Dec-01 | | 0.6 | 6.7 | | 1.5 | | | 0.3 |
| 5-Dec-01 | 3 | 3.1 | 5.7 | | | | | |
| 6-Dec-01 | | 1.4 | 5.2 | | | | | 0.4 |
| 7-Dec-01 | 1.2 | | 5.1 | 0.75 | 3.2 | | | |

| Date | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 8-Dec-01 | | | | | | | | | |
| 9-Dec-01 | | | | | | | | | 11.4 |
| 10-Dec-01 | | | 3.5 | 0.5 | | | | 0.7 | 6.9 |
| 11-Dec-01 | | 0.3 | 5.5 | 3.8 | 1 | | | 0.7 | 2.7 |
| 12-Dec-01 | | | 5.3 | | | | | | |
| 13-Dec-01 | 1.2 | 0.3 | 5 | | 4 | | | | 9.1 |
| 14-Dec-01 | | 0.3 | 4 | | | | | | 5.6 |
| 15-Dec-01 | 0.5 | | | | | | | | |
| 16-Dec-01 | | | | | | | | | |
| 17-Dec-01 | | 5.5 | 7.9 | | | | | | 5.9 |
| 18-Dec-01 | | 3.1 | 5.6 | | | | | | 4.5 |
| 19-Dec-01 | 0.7 | 6.6 | 5.2 | | 2 | | | 1 | 0.9 |
| 20-Dec-01 | | 5.9 | 6 | | | | | | .3 |
| 21-Dec-01 | | 4.3 | 1.2 | | | | | | |
| 22-Dec-01 | | | | | | | | | |
| 23-Dec-01 | | | | | | | | | |
| 24-Dec-01 | | | | | | | | | |
| 25-Dec-01 | | | | | | | | | |
| 26-Dec-01 | | | | | | | | | |
| 27-Dec-01 | | | | | | | | | |
| 28-Dec-01 | | | | | | | | | |
| 29-Dec-01 | | | | | | | | | |
| 30-Dec-01 | | | | | | | | | |
| 31-Dec-01 | | | | | | | | | |
| **Total Hours** | 10.5 | 42.2 | 109.8 | 29.85 | 20.1 | | | 4.7 | 66.4 |
| **Rate** | $275.00 | $205.00 | $75.00 | $160.00 | $205 | | | $257.50 | $120.00 |
| **Total Amount** | $2,887.50 | $8,651.00 | $8,235.00 | $4,776.00 | $4,121 | | | $1,210.25 | $7,968.00 |

Grand Total

# EXHIBIT D

BELIN

*This worksheet analyzes the work performed by Richard Belin relative to "reviewing and revising" various materials with a view towards identifying duplicative work. For entries representing "block billing", I assigned fractions that reflect the total hours spent on the tasks described based on my best estimation. The hours are totaled and multiplied by Mr. Belin's compromised billing rate to generate a "lodestar." This analysis does not include a bulk of Mr. Belin's reported hearing preparation, attendance at hearing, travel time, and includes a very limited number of telephone conferences.*

Compromised Hourly Rate:
$257.50

| Date | Billing | Entry | Hours | Apportioned | Amount |
|---|---|---|---|---|---|
| 1-Jun-01 | | Memorandum and e-mail regarding scheduling conference issues | 0.2 | | $51.50 |
| 4-Jun-01 | | E-mails regarding specialized services | 0.2 | | $51.50 |
| 5-Jun-01 | | Reviewing e-mails re: York and conference call | 0.1 | | $25.75 |
| 6-Jun-01 | Yes | Reviewing draft response to motion re: York | 0.5 | 1/3 | $128.75 |
| 11-Jun-01 | Yes | Attention to additional staffing | 0.4 | 1/3 | $103.00 |
| 12-Jun-01 | | E-mails with Costanzo | 0.1 | | $25.75 |
| 18-Jun-01 | | Memorandum from Engel | 0.1 | | $25.75 |
| 3-Jul-01 | | Reviewing residential placement documents | 0.2 | | $51.50 |
| 11-Jul-01 | | Reviewing supplemental brief on fees and e-mail to Schwartz re: same | 0.3 | | $77.25 |
| 17-Jul-01 | | Reviewing opposition to motion for leave; Meacham letter to Costanzo; reviewing draft motion for further relief re: specialized services | 0.3 | | $77.25 |
| 24-Jul-01 | Yes | Reviewing court order on fees and other orders | 0.2 | 1/3 | $51.50 |
| 12-Aug-01 | | Reviewing and responding to correspondence; reviewing court filing re: expert issues and motion for relief | 0.3 | | $77.25 |
| 13-Aug-01 | | Reviewing memoranda and correspondence with AG; preparation for and participate in telephone conference with Schwartz et al re: expert and discovery issues and hearing preparation | 2.3 | | $592.25 |
| 15-Aug-01 | Yes | Reviewing discovery drafts | 0.2 | 1/4 | $51.50 |
| 20-Aug-01 | Yes | Reviewing, revising document responses | 0.3 | 1/3 | $77.25 |

06/30/2003 02:05 FAX 617 727 5765    AG ADLAW DIV    → SPRINGFIELD    ☒026

| Data | Block Billing | Entry | Hours | Billing Apportioned | Amount |
|---|---|---|---|---|---|
| 21-Aug-01 | | Reviewing, revising interrogatory responses and responses to document requests and telephone conference with Engle re: same; telephone call from Costanzo | 1.1 | | $283.25 |
| 27-Aug-01 | | With Hatrick | 0.2 | | $51.50 |
| 29-Aug-01 | | Letter from Wechsler | 0.1 | | $25.75 |
| 31-Aug-01 | | Reviewing defendants' responses to interrogatories and document requests | 0.5 | | $128.75 |
| 7-Sep-01 | | Extensive review and revision of motion to preclude and supporting brief; reviewing, revising Schedule A's to DNR and DMR; e-mails to Schwartz; further review and revision of brief | 2.1 | | $540.75 |
| 10-Sep-01 | | Reviewing, revising motion; reviewing deficiency letter re: int's and doc requests | 0.8 | | $206.00 |
| 12-Sep-01 | | Letter from Wechsler re experts; with Hatrick re: emergency motion | 0.4 | | $103.00 |
| 13-Sep-01 | | Reviewing Daubert materials; e-mails with Schwartz and Hatrick; reviewing, revising motion papers; Wechsler letter and objections | 1.2 | | $309.00 |
| 17-Sep-01 | | Emails re Hatrick re depositions and motions; reviewing Neiman order on fees, reviewing Defendant's opposition to emergency motion; meeting with Hatrick re: discovery issues and motions; message to Wechsler re: discovery and need to confer | 1.1 | | $283.25 |
| 18-Sep-01 | | Reviewing correspondence | 0.1 | | $25.75 |
| 20-Sep-01 | Yes | Reviewing opposition to motion to preclude | 0.27 | 1/4 | $69.53 |
| 24-Sep-01 | | Memorandum from Costanzo; emails with Costanzo and Schwartz memo to Costanzo and Schwartz with Hatrick re: discovery motions; reviewing, revising motion to compel further discovery responses and telephone conference with Hatrick re: same; reviewing, revising Belin affidavit; further review and revision of brief on motion to compel and Belin affidavit | 2 | | $515.00 |

| Date | Block Billing | Entry | Hours | Billings Apportioned | Amount |
|------|--------------|-------|-------|---------------------|--------|
| 25-Sep-01 | Yes | Reviewing, revising Belin and McLaughlin affidavits; with Hatrick | 2.3 | 2/3 | $592.25 |
| 26-Sep-01 | | Reviewing, revising serving [sic] motion to compel and memo in support, with McLaughlin, reviewing, revising Costanzo letter re expert issues; emails re: expert disclosure issues; reviewing correspondence | 0.9 | | $231.75 |
| 27-Sep-01 | Yes | Reviewing correspondence; reviewing opposition to motion to compel; reviewing York and Costanzo correspondence; email re: York letter. Reviewing Metrowest document | 1.4 | 8/9 | $360.50 |
| 29-Sep-01 | | Emails re: discovery issues; letter from Meacham re: discovery | 0.3 | | $77.25 |
| 30-Sep-01 | | Reviewing Deposition transcripts | 1.3 | | $334.75 |
| 30-Sep-01 | | Reviewing Deposition transcripts | 1.6 | | $412.00 |
| 1-Oct-01 | Yes | Reviewing key documents; reviewing York motion to continue reviewing, revising motion to compel; memo in support | 0.95 | 1/2 | $244.63 |
| 3-Oct-01 | Yes | Reviewing, revising letter to York; reviewing, revising brief on motion to compel discovery responses; with Hatrick | 0.65 | 1/2 | $167.38 |
| 4-Oct-01 | | Reviewing, revising motion to compel; further edits | 0.5 | | $128.75 |
| 5-Oct-01 | | Reviewing court notice; email from Boundy | 0.2 | | $51.50 |
| 8-Oct-01 | | Email from Schwartz; telephone call to Hatrick; reviewing expert reports | 2.3 | | $592.25 |
| 9-Oct-01 | | With Hatrick re: motion to compel; emails with Schwartz; reviewing, revising motion to compel; reviewing expert reports; telephone conference with Schwartz et al | 1.4 | | $360.50 |
| 10-Oct-01 | | Reviewing witness list and expert addendum; reviewing, revising expert subpoenas | 0.4 | | $103.00 |
| 11-Oct-01 | | Emails with Hatrick; reviewing further expert reports | 1.5 | | $386.25 |
| 12-Oct-01 | | Reviewing, revising draft motion to compel and brief re: DNA documents | 0.4 | | $103.00 |

Page 3 of 12

| Date | Block Billing | Description | Hours | Hours Apportioned | Amounts |
|---|---|---|---|---|---|
| 15-Oct-01 | | Emails w/ Laski; telephone call to Engel; telephone conference with Schwartz et al; reviewing defendant's opposition to motion to compel | 1.4 | | $360.50 |
| 16-Oct-01 | | Reviewing expert reports; telephone conf. W/ Schwartz et al; with McLaughlin | 2.1 | | $540.75 |
| 17-Oct-01 | | Reviewing York discovery letter and email with Schwartz re: response to same; meeting with Hatrick; telephone conference with Engel re: outline for motion in limine; emails with Schwartz re expert issues; reviewing correspondence; reports and motion | 1 | | $257.50 |
| 18-Oct-01 | | memorandum to Costanzo | 0.1 | | $25.75 |
| 19-Oct-01 | Yes | Reviewing Court rulings | 0.1 | 1/3 | $25.75 |
| 21-Oct-01 | | Reviewing Riley deposition transcript | 1 | | $257.50 |
| 22-Oct-01 | Yes | Reviewing court rulings; reviewing, revising pretrial memo; further review and revision of brief | 2.4 | 3/5 | $618.00 |
| 23-Oct-01 | Yes | Reviewing correspondence; reviewing defendant's Opposition re: motion to compel DMR, further review and revision of pretrial brief | 1.02 | 3/5 | $262.65 |
| 24-Oct-01 | Yes | Reviewing court order; reviewing, revising motion in limine | 0.5 | 2/7 | $128.75 |
| 26-Oct-01 | Yes | Reviewing DMR documents | 0.65 | 1/2 | $167.38 |
| 29-Oct-01 | Yes | Reviewing deposition transcript in preparation for hearing | 1.5 | 1/2 | $386.25 |
| 30-Oct-01 | Yes | Reviewing Daubert motions; reviewing documents; reviewing, revising motion to compel; with Hatrick; hearing preparation | 0.85 | 5/7 | $218.88 |
| 31-Oct-01 | Yes | Reviewing correspondence and court filings; reviewing supplemental interrogatory responses; reviewing defendant's pretrial memo; hearing preparation | 1.05 | 2/3 | $270.38 |
| 1-Nov-01 | Yes | Reviewing, revising motion in limine; reviewing opposition to motion to compel | 0.95 | 1/4 | $244.63 |
| 8-Nov-01 | | With McLaughlin; emails with Schwartz | 0.3 | | $77.25 |
| 9-Nov-01 | | Analysis of findings and rulings; meeting w/ Hatrick | 0.9 | | $231.75 |

| Entry Date | K.Block Billing | Description Entry | Hours | Approved Hours | Billing Amount |
|---|---|---|---|---|---|
| 6-Nov-01 | | Reviewing outlines for findings of fact and post trial brief and emails re: same | 0.4 | | $103.00 |
| 19-Nov-01 | Yes | Reviewing, revising new outlines; conf w/ Hatrick re: findings & rulings | 1.3 | 2/3 | $334.75 |
| 1-Dec-01 | | Reviewing, revising post-hearing brief | 1 | | $257.50 |
| 3-Dec-01 | | Reviewing, revising brief; fax to Schwartz; meeting with Hatrick re: findings | 0.6 | | $154.50 |
| 11-Dec-01 | | Reviewing, revising findings | 0.7 | | $180.25 |
| 19-Dec-01 | | Reviewing, revising proposed findings of fact | 1 | | $257.50 |
| 27-Dec-01 | | Reviewing post hearing brief | 0.6 | | $154.50 |
| 31-Dec-01 | | Reviewing defendant's post hearing submittals | 1 | | $257.50 |
| 3-Jan-02 | | Reviewing defendant's post trial submittals; fax and emails with Schwartz re: fees and post trial submittals | 1.1 | | $283.25 |
| 9-Jan-02 | | Reviewing defendants' supplementary memorandum | 0.4 | | $103.00 |
| 28-Jan-02 | | Attention to CPR time charges | 0.2 | | $51.50 |
| 18-Mar-02 | | Reviewing, revising discovery responses and emails re: same | 0.2 | | $51.50 |
| 6-May-02 | | Reviewing court decisions and emails re: same | 0.6 | | $154.50 |
| 16-May-02 | | Preparation for and participate in conference call w/ S. Schwartz et al re: next steps; emails with McLaughlin | 1.2 | | $309.00 |
| 15-Jul-02 | | Reviewing First Circuit Notice | 0.1 | | $25.75 |
| 17-Jul-02 | | Reviewing Neiman Order | 0.1 | | $25.75 |
| 18-Jul-02 | | **Reviewing, revising R.Chen research memo | 0.3 | | $77.25 |
| 19-Jul-02 | | ***Further reviewing, revising legal research memo | 0.2 | | $51.50 |
| 25-Jul-02 | | **Reviewing C. Powell and D. Cole memoranda | 0.7 | | $180.25 |

| Activity Date | Biller/Timekeeper | Activity Entry | Hours | Apportioned | Amount |
|---|---|---|---|---|---|
| 29-Jul-02 | | Reviewing defendants' filing re: active treatment policy | 0.2 | | $51.50 |
| 9-Aug-02 | | **Reviewing Pavelukes memorandum re: Gonzaga legal research issues | 0.6 | | $154.50 |
| 16-Aug-02 | Yes | Reviewing time records and prior affidavits and drafting revising affidavit with support of fee application; reviewing court order re active treatment | 1.7 | 2/3 | $437.75 |
| 22-Aug-02 | | Reviewing defendant's brief; further revisions to fee affidavit | 0.6 | | $154.50 |
| 11-Sep-02 | | Reviewing memorandum on jurisdictional issues | 0.7 | | $180.25 |
| 10-Oct-02 | | Reviewing defendant's opposition to fee application | 0.2 | | $51.50 |
| 29-Oct-02 | | Reviewing reply brief ie. attorneys' Fees | 0.5 | | $128.75 |
| Grand Total | | | | | |

** I believe this item involves reviewing summer associate work.

# EXHIBIT E

ENGEL

COMPROMISED RATE $205.00

| DATE | BLOCK BILLING | ENTRY | TIME BILLED | COMMENTS | $ |
|------|------|------|------|------|------|
| 4/17/01 | | Edit letter to DMR Re: PASARR | 0.25 | | |
| 6/4/01 | | Review & edit P motion on AT | 0.5 | | |
| 6/5/01 | | Draft and revise interrogatories | 4.5 | | |
| 6/18/01 | | Review independent expert report | 0.35 | | |
| 6/28/01 | | Review Gardner materials on AT | 1.5 | | |
| 7/23/01 | | Revise interrogatories | 1.75 | | |
| 7/25/01 | | Revise req. for production; | 6 | | |
| | | revise discovery | | | |
| 7/25/01 | | Review court fee decision | 0.4 | | |
| 8/6/01 | | Review discovery memos | 0.75 | | |
| 8/15/01 | | Review draft response to | 0.5 | | |
| | | interrogatories | | | |
| 8/16/01 | | Revise response to req. for | 1.25 | | |
| | | production | | | |
| 8/17/01 | | Revise discovery response | 1.5 | | |
| 8/21/01 | | Revise discovery | 1.75 | | |
| 9/4/01 | | Review D's discovery responses | 0.75 | | |
| 9/7/01 | | Review draft Schedule A for | 0.4 | | |
| | | depositions | | | |
| 9/9/01 | | Review Pliarik report | 2 | | |
| 10/4/01 | | Review P's expert reports | 2.5 | | |
| | | Review Def.'s experts' vitae | 0.4 | | |
| 10/15/01 | | Review D. Expert Report | 2.5 | | |
| 10/16/01 | | Review D. witness & exhibit | 0.75 | | |
| | | list and consult with P attorneys | | | |
| 10/29/01 | | Draft summary of Hauser deposition | 4.5 | | |
| 11/1/01 | | Revisions to Motions on | 2 | | |
| | | Def.'s affidavits | | | |
| | | Review of D. memo on | 0.4 | | |
| | | privilege log | | | |

| ENGEL | | | | | |
|---|---|---|---|---|---|
| COMPROMISED RATE $205.00 | | | | | |
| DATE | BLOCK BILLING | ENTRY | TIME BILLED | COMMENTS | $ |
| 11/28/01 | | Review & edit post-trial memo | 2.25 | | |
| 11/29/01 | | Draft comments re memo | 1.25 | | |
| | | review & edit CEC section | | | |
| | | of post-trial | | | |
| 1/2/02 | | Read Defs' brief and proposed | 2 | | |
| | | findings | | | |
| 5/7/02 | | Read court decision | 1 | | |
| 6/23/02 | | Read AG brief | 1 | | |
| 10/28/02 | | Review draft of reply brief on fees | 1 | | |
| | | | | | |
| | | | 43.7 | | |
| | | | | | |
| | | | | | $8,958.50 |

# EXHIBIT F

**Expert Tours**

*This worksheet analyzes the billable time reported by the attorneys and their support staff relative to instances where two legal staffers participate in "expert tours." The billable hours are totaled and multiplied by the applicable hourly rate to generate a "lodestar" for each person. These figures are then added to provide a grand total. This analysis does not cover work performed in preparation of the expert tours.*

**Key**
Steven Schwarz = **SJS**
Cathy Costanzo = **CEC**
Marcia Boundy = **MEB**
Matthew Engel = **Engel**

Frank Laski = **Laski**

### 30-Jul-01

| Attorney/Staff | Description | Hours | Rate | Total |
|---|---|---|---|---|
| SJS | Visit classmembers (Raybo, O'Connor, and Donovan) at nursing facilities and day hab programs with expert) | 9.5 | $275.00 | $2,612.50 |
| CEC | Tours of nursing homes and specialized service settings w/ experts | 10 | $205.00 | $2,050.00 |
| MEB | Nursing home/day hab tours | 8 | $75.00 | $600.00 |
| | | Total | | $6,262.50 |

### 1-Aug-01

| Attorney/Staff | Description | Hours | Rate | Total |
|---|---|---|---|---|

Page 1 of 3

| | | | Rate | Total |
|---|---|---|---|---|
| SJS | Review specialized services and nursing facility programs for classmembers Black and Hayes | 8 | $275.00 | $2,200.00 |
| Engel | Rolland expert tours | 12 | $205.00 | $2,460.00 |
| | | Total | | $4,660.00 |

**12-Aug-01**

| Attorney/Staff | Description | Hours | Rate | Total |
|---|---|---|---|---|
| SJS | Review specialized services for classmember Gary Harlow | 4.5 | $275.00 | $1,237.50 |
| Engel | Rolland expert tours | 10 | $205.00 | $2,050.00 |
| MEB | Tours of nursing homes, day habs; travel to and from North Shore | 8 | $75.00 | $600.00 |
| | | Total | | $3,887.50 |

**13-Aug-01**

| Attorney/Staff | Description | Hours | Rate | Total |
|---|---|---|---|---|
| SJS | Review specialized services for Herb Stincel and Ruth Clark | 9 | $275.00 | $2,475.00 |
| Engel | Rolland expert tours | 10 | $205.00 | $2,050.00 |
| | | Total | | $4,525.00 |

**22-Aug-01**

| Attorney/Staff | Description | Hours | Rate | Total |
|---|---|---|---|---|
| CEC | Expert tour of E. Affenito | 7 | $205.00 | $1,435.00 |
| Engel | Rolland expert tours | 4 | $205.00 | $820.00 |
| | | Total | | $2,255.00 |

**23-Aug-01**

| Attorney/Staff | Description | Hours | Rate | Total |
|---|---|---|---|---|
| Laski | Tour nursing home, meet clients and guardians and providers S.S. collaborative Wakefield, (E.S.), May | 10 | $275.00 | $2,750.00 |

| | | Hours | Rate | Total |
|---|---|---|---|---|
| Engel | Rolland expert tours | 9 | $205.00 | $1,845.00 |
| McLaughlin | Tour facilities with expert | 8.5 | $100.00 | $850.00 |
| | Total | | | $5,445.00 |

| 23 Aug 01 Attorney/Staff | Description | Hours | Rate | Total |
|---|---|---|---|---|
| CEC | Expert tours with Elizabeth Jones - Gammel, Duggan, Middleton | 13 | $205.00 | $2,665.00 |
| Laski | Meeting visit to nursing home and program with Lynn (Sunbridge and D.P. (goodwill) Salem with L.R. | 7 | $275.00 | $1,925.00 |
| | Total | | | $4,590.00 |

| GRAND TOTAL | $30,625.00 |
|---|---|

# EXHIBIT G

HATRICK -- SUPERVISING SUMMER ASSOCIATION

COMPROMISED RATES $120.00

| DATE | BLOCK BILLING | ENTRY | TIME BILLED | COMMENTS | $ |
|------|---------------|-------|-------------|----------|---|
| 6/4/02 | | Spoke with S. Schwartz regarding summer associate projects in preparation for an appeal | 0.4 | | |
| 6/7/02 | | Prepared materials for and submitted summer associate research requests | 1.5 | | |
| 6/17/02 | | Followed up with N. Austin regarding PASARR regulations assignment | 0.4 | | |
| 6/18/02 | ☑ | Finished gathering background materials for summer associate assignments; followed-up with C. Powell on NHRA assignment | 0.9 | 1/2 | |
| 6/19/02 | ☑ | Received Oct. 2001 memorandum in support from P. Long and forwarded to C. Powell & N. Austin (to complete case history packet) | 0.3 | 1/2 | |
| 6/20/02 | ☑ | Met with N. Austin regarding PASARR regulations assignment; followed-up with research help | 0.65 | 1/2 | |
| 6/24/02 | | Met with C. Powell regarding research assignments on the nursing home amendments | 0.8 | | |
| 6/25/02 | ☑ | Drafted and submitted summer associate project on post-Sandoval case | 1 | 1/2 | |
| 6/26/02 | | Met with E. Chen to discuss Sandoval summer associate assignments | 0.2 | | |

AG ADLAW DIV → SPRINGFIELD Ø040

| Date | | Description | Hours | |
|---|---|---|---|---|
| 7/2/02 | ☑ | Followed up with summer associates ab. their assignments | 1 | 1/2 |
| 7/3/02 | | Updated S. Schwartz regarding summer associate projects; touched base with C. Powell, N. Austin and E. Chen regarding progress on their assignments, trouble shooting, etc. | 3 | |
| 7/8/02 | | Met with D. Cole regarding "then existing facts and law" summer associate assignment | 0.2 | |
| 7/9/02 | | Reviewed C. Powell's analysis of the legislative history of "active treatment" and "specialized services" in the NHRA and subsequent amendments; followed up with C. Powell; spoke with E. Chen re Sandoval assignment; reviewed N. Austin's rough draft of CFR citation history; edited E. Chen's rough draft | 5.5 | |
| 7/10/02 | | Continued editing E. Chen's rough draft of his analysis of Sandoval and progeny and Sandoval's redation and application to Rolland discussed edits & further research with E. Chen | 1.3 | |
| 7/11/02 | | Discussed PASARR regulations research project with N. Austin; received update on Sandoval project from E. Chen; discussed all summer associate projects and general case update with Beli | 1.4 | |
| 7/12/02 | ☑ | Reviewed C. Powell's rough draft of legislative history of NHRAs and summary memorandum; discussed project details with E. Chen | 1.75 | 1/2 |

| Date | Description | Hours | |
|---|---|---|---|
| 7/15/02 | & N. Austin Reviewed draft of N. Austin's PASARR regs. Research project; reviewed and edited C. Powell's NHRA legislative history project; forwarded final copies to R. Belin & S. Schwartz | 4.2 | |
| 7/16/02 | Edited E. Chen's second draft of Sandoval research project; met with D. Cole to receive progress report on "then existing facts & law" project. Spoke with S. Schwartz about research projects and schedule for writing appeals brief | 4.3 | |
| 7/17/02 | Edited N. Austin's project on PASARR regs; followed up with C. Powell about extent of his legislative history research; drafted summer associate assignment for Gonzaga research; drafted summer associate assignment for 1990-2002 legislative history research; forwarded assignments and finished projects to S. Schwartz; reviewed C. Powell's final draft | 5.6 | |
| 7/18/02 | Edited E. Chen's final draft of Sandoval research project | 0.3 | |
| 7/19/02 ☑ | Edited E. Chen's Sandoval research project | 0.95 | 1/2 |
| 7/22/03 | Edited E. Chen's final draft of the Sandoval assignment; filled out evaluation and reviewed with E. Chen | 1 | |
| 7/24/02 | Renewed N. Austin's PASARR regs project and shared review | | |

|  |  |  |
|---|---|---|
| with him. Met with S. Faveliki about Gonzaga research project; emailed summer associate projects to S. Schwartz | | |
| 7/25/02 | Reviewed D. Cole's final draft on "their existing law and facts" research and followed up with D. Cole | 0.5 |
| 8/1/02 | Followed up with N. Austin about breadth of research | 0.6 | 1/3 |
| 8/5/02 | Touched base with S. Favelukes about Gonzaga research | 0.2 |
| 8/8/02 | Received final draft of Gonzaga research from S. Favelukes | 0.2 | 1/2 |
| 8/9/02 | Reviewed S. Favelukes' finished draft of Gonzaga research project; reported to R. Belin on same; reviewed NHRA for non-cited support | 1.3 |

40.45 X $120 (compromised rate)

Total $4,854

# EXHIBIT H

**Rolland Excessive Fees Project**
**Marcia Boundy**
**Administrative Functions**

*This worksheet analyzes the administrative work performed by Marcia Boundy. For the purposes of this worksheet, administrative work includes typing, faxing, photocopying ("Xeroxing"), scheduling, filing, making travel arrangements, printing and/or downloading materials, and other traditionally administrative functions. The worksheet calculates the total number of administrative hours charged and multiplies that figure by Ms. Boundy's hourly rate of $75.*

| Date | Description | Time Spent | Notes |
|------|-------------|------------|-------|
| 2-Jan-01 | Filing, Xeroxing incoming records, sample2 updated records | 6.3 | |
| 3-Jan-01 | Read, Xerox, assemble, sort defendants' documents, re: specialized services checklist for majority of clients in the sample1 | 1.6 | |
| | Fax release authorization forms to social workers for client signatures | 0.2 | |
| | Review clients records, Xerox and file .. Incoming records sample1 | 2.35 | |
| 4-Jan-01 | Review client records; Xerox and file incoming records for sample1 classmembers re: day hab services | 1.15 | |
| 5-Jan-01 | Fax release form to nursing home for signature of class member | 0.1 | |
| 9-Jan-01 | Filing, Xeroxing records of class member from sample1 | 0.5 | |
| | Filing pre-existing records, reorganizing files to make room for incoming records from sample2 | 1 | |
| 11-Jan-01 | Fax classmember's authorization for release of records to nursing home | 0.1 | |

05/30/2003 02:08 FAX 617 727 5785    AG ADLAW DIV        → SPRINGFIELD        ☒045
Case 3:98-cv-30208-KPN    Document 371    Filed 05/30/03    Page 66 of 85

Page 2 of 21

| Date | Description | Hours Spent | Notes |
|---|---|---|---|
| 11-Jan-01 | Filing, Xeroxing incoming records re: sample1 and sample2 class members | 1 | |
| 12-Jan-01 | Filing, Xeroxing records incoming sample1 and sample2 class members | 3.3 | |
| 17-Jan-01 | Review client recors: continue to Xerox, file and write up narratives on sample class members based on incoming records | 1 | |
| 22-Jan-01 | Xerox affidavits, defendant's specialized services checklist; write cover letter and forward all above to experts | 2 | |
| 23-Jan-01 | Fax records requests with proper authorizations to nursing facilities | 0.2 | |
| | Filing, Xeroxing nursing facility records | 1.2 | |
| 24-Jan-01 | Filing, Xeroxing records of nursing home residents | 4 | |
| 25-Jan-01 | Drop off medical/nursing home records at Copy Cat | 0.1 | |
| | Fax requests, authorizations to three nursing facilities | 0.7 | |
| | Xeroxing, filing incoming records from sample class members | 2.6 | |
| 31-Jan-01 | Filing, and Xeroxing classmembers' records forwarded by DMR service coordinator | 0.7 | |
| 9-Feb-01 | Filing, Xeroxing DMR service coordinator's records for files, expert, etc. | 0.8 | |
| 12-Feb-01 | Filing and Xeroxing nursing home records for expert, staff | 0.5 | |
| 14-Feb-01 | Fax record request and release to New Bedford nursing home | 0.2 | |
| 21-Feb-01 | Filing, Xeroxing nursing home records for three classmembers... | 2.2 | |
| 26-Feb-01 | Sorting, Xeroxing and filing incoming records of classmember(s) | 1.8 | |

US/SU/ZUUS UZ.UU FAA UI/ /Z/ S/US AG ADLAW DIV → SPRINGFIELD ☒046

| Date | Description | Time Spent | Notes |
|---|---|---|---|
| 1-Mar-01 | Filing, Xeroxing incoming medical records, nursing facility records for members in both original sample and sample2 | 1.3 | |
| 7-Mar-01 | Draft letter to nursing home re: (?) Make copies of classmember's release authorization and file; enclose same in letter | 0.3 | |
| | Review, Xerox and file client records received via mail from DMR Brockton Office | 0.35 | |
| 8-Mar-01 | Review client records, specifically, the semi-annual report for July thru December; culled through documents, Xeroxed pertinent pages for sample classmembers | 1.25 | |
| 12-Mar-01 | Filing, organizing individual records of all classmembers listed in defendants' semi-annual report; cull and Xerox records of sample1 and sample2 individuals and file accordingly. | 2.3 | |
| 14-Mar-01 | Review client records: updated Pasars received. Read, Xeroxed and filed | 0.3 | |
| 15-Mar-01 | Filing and Xeroxing records received from nursing homes | 0.5 | |
| 21-Mar-01 | Fax mem to co-counsel | 0.2 | |
| 29-Mar-01 | Fax court decision to various agencies, people (NAPAS, ARC, etc.) | 0.6 | |
| 9-Apr-01 | Review classmembers' records, copy, file accordingly, designate those to be shipped out for copying | 1.3 | |
| | Delivery of sample2 classmembers to Copy Cat | 0.4 | |
| 10-Apr-01 | Review client records; sort, organize filing system for sample 2 classmembers | 1.5 | |
| | Review client records, copy 300 pages of newly-received records | 0.6 | |
| 12-Apr-01 | Review client records; deliver second batch to copy shop | 0.25 | |

| Date | Description | Time Spent | Notes |
|---|---|---|---|
| 17-Apr-01 | Review sample 2 client records Xeroxed at area copy shop; assemble for attnys, for experts; file originals etc | 1 | |
| 24-Apr-01 | Telephone to several nursing homes re: FY12 Pasarrs; fax releases to NH social workers | 0.3 | |
| 25-Apr-01 | Filing, copying incoming day hab records and Pasarrs | 0.9 | |
| 26-Apr-01 | Review client records, specifically faxed Pasarr from Greenery XCC; copy and file accordingly | 0.2 | |
| 27-Apr-01 | Review client records, Xerox and file recors received during the week.... Copies for eperst | 1.1 | |
| 30-Apr-01 | Fax to expert seeking availability dates for tours | 0.2 | |
| 1-May-01 | Review client records, specifically, incoming Pasarrs; copy and file accordingly | 0.45 | |
| | Filing, xeroxing incoming Pasarrs; additional day hab records | 1.2 | |
| 3-May-01 | Filing, xeroxing Pasarrs, day hab records | 0.5 | |
| 7-May-01 | Telephone call from expert re: possible tour sked. | 0.1 | |
| 8-May-01 | E-mail to Steven proposed sked of nursing home/day hab tours | 0.2 | |
| 10-May-01 | Copying, filing incoming Pasarrs; also day hab records; also, sorting files to be Xeroxed at shop; deliver files/records to shop | 2 | |
| | Telephone to experts re: possible tours, skeds | 0.3 | |
| 17-May-01 | Review client records, specifically, updated Pasarrs received in day's mail (sic); copy and file accordingly | 0.2 | |

| Date | Description | Time Spent | Notes |
|---|---|---|---|
| 21-May-01 | Review correspondence and documents re: proposed tour schedules for experts to visit classmembers at NF's and day habs; review maps, online directions for mileage, time etc | 1.4 | |
| | Fax 20 pages of information re: (?) w/ articles re: expert testimony to two experts | 0.5 | |
| 24-May-01 | Mail plaintiffs motion re: sked order to court; make copies, accordingly | 0.4 | |
| 31-May-01 | Research online, focusing on additional names re: active treatment; download materials, Xerox for counsel | 0.3 | |
| | Prepare labels for mass mailings to guardians and/or classmembers | 0.8 | |
| 1-Jun-01 | Copy and file all requests for releases | 0.5 | |
| | Print downloaded material and fax to experts | 0.6 | |
| 4-Jun-01 | Review client records...set up files for tracking receipt of releases. Copy and file incoming releases | 0.35 | |
| 5-Jun-01 | Review client records, specifically, incoming release authorizations. Copy, catalogue, file | 0.25 | |
| 7-Jun-01 | Review client records, specifically incoming release authorizations: copy, catalogue, file. | 0.5 | |
| 11-Jun-01 | Fax memo to co-counsel, laying out scheduling order for discovery, motions, depositions, etc. | 0.2 | |
| | Fax Judge Neiman's decision re: spec. services to independent expert. | 0.5 | |
| | Telephone to office of independent expert to verify receipt of fax and inquire about telephone number of KGM associate in Tennessee. | 0.1 | |

05/30/2003 02:09 FAX 617 727 5785    AG ADLAW DIV → SPRINGFIELD    Ø049
Case 3:98-cv-30208-KPN    Document 371    Filed 05/30/03    Page 70 of 85

Page 6 of 21

| Date | Description | Time Spent | Notes |
|---|---|---|---|
| 12-Jun-01 | Copy pertinent sections of expert witness reports, rebuttals, affidavits, motoins from Johnson case in preparation for better understanding of Daubert in Rolland | 0.8 | |
| 13-Jun-01 | Label, assemble classmemebers' files received from nursing homes, day hab provides and state agencies | 3 | |
| 14-Jun-01 | Review client records, specifically, incoming releases; copy, catalogue, file | 0.15 | |
| 15-Jun-01 | Continue drafting letters to nursing homes, day habs and service mrgs/case managers on behalf of classmembers from Summer of 2000 tour; assemble with release authorizations; mail | 0.3 | |
| 18-Jun-01 | Review client records, specifically releases received over the weekend, copy, catalogue and file. | 0.15 | |
| 19-Jun-01 | Telephone to experts re: scheduling of tours July 24-Aug 31. | 0.1 | |
| 21-Jun-01 | e-mail and replies, voice mail and notes: review Cathy's emailed synposis (sic) HCFA telephone call (6/19); review voice mails from experts re: sked for summer tours. | 0.2 | |
| 27-Jun-01 | Fax records requests and release authorization on behalf of class member to DMR service coordinator | 0.2 | |
| | Telephone to third expert re: request for c.v.; possible tour dates | 0.1 | |
| | Review client records, deliver six files to Copy Cop | 0.5 | |
| | Telephone to expert re: scheduling tours; active treatment materials (left voice message) | 0.05 | |
| 3-Jul-01 | Fax listing of classmembers to B. Pilarcik; mail court schedule | 0.2 | |

| Date | Description | Time Spent | Notes |
|---|---|---|---|
| | Filing NH and DH records; setting up files, copies for experts, etc. etc. | 1.6 | |
| 5-Jul-01 | Filing and organizing (sic) office files | 1.25 | |
| 6-Jul-01 | Conference with attys (Cathy and Matthew) re: available dates for nursing home/day hab tours. | 0.5 | |
| 9-Jul-01 | Telephone to expert B. Pilarcik re: dates of availability (sic) for tours; discussion of number of days needed to conduct tours; discussion of specific clients in caseload | 0.2 | |
| | Review client records and assemble for each expert accordingly based on selected classmembers; make additional copies received over the weekend and in Monday's mail... | 2.5 | |
| 10-Jul-01 | Review client records, copy as needed, incoming records | 0.7 | |
| | Start contacting 52 nursing home and day hab providers to draft a schedule for nursing home and day hab tours for 34 clients at 52 sites based on availability and respective schedules of three attys and three experts | 6.2 | |
| 12-Jul-01 | Conference with Cathy re: tours, experts, scheduling status | 0.5 | |
| 13-Jul-01 | Telephone to more providers/social workers/ experts re: tour schedule | 6.5 | |
| 16-Jul-01 | Additional telephone calls to nursing homes, day habs re: tour schedule... continue tweaking schedule | 2.1 | |
| | E-mail to and from expert re: travel arrangements, transportation issues | 0.5 | |
| | Conference with Matthew re: schedule re: tours | 0.1 | |
| | Telephone to Linda in Newton CPR re: expert's travel, hotel reservations, etc. | 0.4 | |

05/30/2003 02.09 FAX 617 727 5785   AG ADLAW DIV   → SPRINGFIELD   ☒051

| Date | Description | Time Spent | Notes |
|---|---|---|---|
| 17-Jul-01 | Draft letter to experts re: tours of nursing homes, day hab sites; provide schedules | 1 | |
| 18-Jul-01 | Review client records, continue assembling for tours, continue Xeroxing and filing | 4.6 | |
| | Telephone and emails to experts re: schedules, tour dates, upcoming conference calls; also to determine what records should be forwarded for medical review. | 1.5 | |
| | E-mail to counsel re: schedules for tours | 0.5 | |
| 19-Jul-01 | Review client records, specifically incoming records for classmembers... Make copies for files and experts | 4 | |
| 23-Jul-01 | Telephone conference call with experts to discuss court hearing, spec. services, active treatment, tours, etc. | 0.3 | |
| | Conference with Cathy re: sample, scheduling tours | 0.25 | |
| | Review client records... again, assembling for tours, checking on status of Pasar dates, release authorizations | 1 | |
| 24-Jul-01 | Revise and edit tour schedule | 1.8 | |
| | Review client records and assemble for tours. | 2.7 | |
| 25-Jul-01 | Telephone calls to expert re: August tour date to be rescheduled (sic) | 0.2 | |
| | Review correspondence and documents re: active treatment as proposed by expert Rucker; download materials and copy and distribute | 0.3 | |
| | Revise and edit tour schedule | 1.2 | |

| Date | Description | Time spent | Notes |
|---|---|---|---|
| 26-Jul-01 | Review client records: continue assembling for tours.. Deliver to copy shops additional records for review by medical expert... Set up files for each atty with pertinent records (Pasarrs, release authorizations, directions) | 3.4 | |
| 27-Jul-01 | Research online getting direction for expert Rucker and respective attnys asigned (sic) to her tours. Directions to and from hotel to nursing homes to day hab sites etc etc | 1 | |
|  | Review client records: continue assembling gathering Pasarras, release authorizations, directions for all attys and all experts | 3.5 | |
|  | Review client records: Pick up records from copy shop; package and mail to Dr. Dubin | 0.5 | |
| 29-Jul-01 | Review client records: final push to prepare for tours: assembling, directions, providing each atty with a schedule of sites, tel. Numbers and personal contacts at each site. | 3 | |
| 31-Jul-01 | Xerox personal maps for each atty for each community to lessen reliance on Internet directions | 2.1 | |
|  | Fax directions from Boston to mursing (sic) home/day hab site for Thursday's tours. | 0.2 | |
| 1-Aug-01 | Revise and edit tour schedule, copy additional maps, for Matthew and Steven | 1 | |
|  | Filing: continue assembling files of August tours | 4.1 | |

05/30/2003 02:09 FAX 617 727 5785    AG ADLAW DIV    → SPRINGFIELD    ☒053

| Date | Description | Time Spent | Notes |
|---|---|---|---|
| 6-Aug-01 | Telephone to New Bedford nursing home and day provider re: Mendes and Murray to set up tours.... Discuss possible tour dates for expert Pilarcik; telephone calls to nursing homes and day habs to reschedule expert Jones tours from August 13 to Aug. 22 and Augst 28 | 3.2 | |
| | Conference with Matthew re: availability for additional tours | 0.2 | |
| | Telephone, email to expert Pilarcik re: availability for additional tours | 0.2 | |
| | Telephone call from expert Jones re: accommodations, fligh reservations etc | 0.2 | |
| | Review client records, tweak tour schedule as needed | 0.25 | |
| | E-mail from expert Rucker re: availability for additional tours in August | 0.1 | |
| | Filing; continue organizing boxes of files | 2.2 | |
| | Telephone to Linda in Newton re: hotel reservations for expert Rucker | 0.1 | |
| 7-Aug-01 | Telephone call from expert Jones re: need to change tour schedule; | 0.3 | |
| | Filing, continue organizing nursing | 4.9 | |
| 8-Aug-01 | E-mail from expert Pilarcik re: availability for additional tour | 0.1 | |
| | Review client records and assemble additional records to be forwarded to expert Rucker and expert Pilarcik; mail Rucker records | 1.25 | |
| | E-mail to Frank Laski re: availability for tours in August | 0.1 | |
| 9-Aug-01 | Telephone to nursing homes and day habs to reschedule expert Jones' tours from the 21st to the 23rd of August; contact day hab outreach programs to advise of change in schedule | 3.4 | |

05/30/2003 02:10 FAX 617 727 5785       AG ADLAW DIV          → SPRINGFIELD       ☒054
Case 3:98-cv-30208-KPN   Document 371   Filed 05/30/03   Page 75 of 85

Page 11 of 21

| Date | Description | Time Spent | Notes |
|---|---|---|---|
| | E-mail from Frank Laski confirming availability | 0.1 | |
| | Mail additional records to expert Pilarcik | 0.4 | |
| | Telephone call from expert Jones advising of need to change another tour date | 0.2 | |
| | Telephone to Steven to advise of latest scheduling snafu | 0.2 | |
| | E-mail to Cathy on vacation re: Jones scheduling issues | 0.2 | |
| | Telephone call from Steven change in xpert Jones schedule | 0.3 | |
| | E-mail to exper lRucker inquiring about additional dates of availability for tours | 0.3 | |
| 10-Aug-01 | Telephone conference call with Steven and Cathy to discuss alternative scheduling ploys | 0.5 | |
| | Telephone call from Cathy, from expert Jones honing in on alternative date | 0.4 | |
| | Revise and edit tour schedule | 1.3 | |
| | Telephone to expert Jones advising of new schedule | 0.2 | |
| | Xerox Sheehan file | 0.5 | |
| 13-Aug-01 | Telephone to nursing homes, days habs re: tweaking new sked for expert Jones's classmembers | 2.1 | |
| | Copy and mail additional records to expert Pilarcik | 0.5 | |
| | Revise and edit tour sked to accommodate different day hab scheduling | 1.7 | |
| 14-Aug-01 | Telephone to day habs to set up appts for sample2 (sic) tours | 1.2 | |
| | Revise and edit tour sked; set up tentatibe (sic) tour sked for august tour | 2.5 | |
| | Telephone to Joanne re: availability as tour guide next week | 0.2 | |

| Date | Description | Time Spent | Notes |
|---|---|---|---|
| | Research online , getting directions from one nursing home/day hab program to another.... Gettign direction and a sense of time involved for touring and travels | 1.9 | |
| | Conference with Pam re: Elizabeth Jones' sked, accommodations, travel rrangments etc. | 0.2 | |
| 15-Aug-01 | Review client records; incomgin roords re: Mosher, Wilmarth, Gordon, Miller, get Xeroxed and filed | 1.5 | |
| | Telephone call from day hab provider re: classmember's release authorization; sked tours | 0.1 | |
| | Fax release authorization of classsmember (sic) to day hab provider | 0.1 | |
| | Revise and edit tour skeds | 3 | |
| | Start organizing files for document production | 2 | |
| 17-Aug-01 | E-mail to Lyn, Frank, and Joanne shceudles for tours, including addresses so they can set up mtg times etc. | 0.5 | |
| | Fax to Joanne, Lyn and Frank materials for next week's tours | 0.5 | |
| | E-mail to Barbara Pilarcik re: Monday's tour in souteastern Mass | 0.3 | |
| | Telephone to Bpilarcik re: Monday's tours | 0.1 | |
| | Telephone conference call with Cathy to discuss next week's schedule of tours, status of discovery issues, etc | 0.25 | |
| | Finalize tour plans for Lyn and Barbara; get together records for transports | 1.3 | |
| 21-Aug-01 | Conference with Pam re: Frank and Joanne schedules | 0.3 | |
| | Conference with Cathy re: tours, documents, directions | 0.2 | |

05/30/2003 02:10 FAX 617 727 5785      AG ADLAW DIV          → SPRINGFIELD          ☒056
Case 3:98-cv-30208-KPN    Document 371    Filed 05/30/03    Page 77 of 85

Page 13 of 21

| Date | Description | Time Billed | Notes |
|---|---|---|---|
| | Secure better directions if possible for Cathy and Elizabeth | 0.5 | |
| | Telephone to day/hab provider re: address, directions | 0.4 | |
| | Conference with Matthew re: next day's tours... contacts | 0.3 | |
| | Xerox additional records and mail to expert Pitarcik | 0.5 | |
| | Write note to Lyn Rucker, advising her of status of tours .. Record availability | 0.4 | |
| | Revise and edit schedule for all parties for all tours | 1.6 | |
| | Revise and edit tour lists with contacts and addresses | 1.4 | |
| 22-Aug-01 | Filing, organizing records... | 7 | |
| | emails from Joanne re: next day's tours | 0.1 | |
| | e-mail to Joanne with set schedule ... | | |
| | explaining whereabouts of day habs, nursing homes | 0.4 | |
| 23-Aug-01 | Filing: continue assembling records for document production | 3.1 | |
| 24-Aug-01 | Filing: finish assembling records for document productions: organize four boxes of all classmember files and label accordingly | 5.5 | |
| | Xerox and mail to Lyn Rucker records received in today's mail from day habs | 0.5 | |
| 4-Sep-01 | Review correspondence and documents re: prayers for relief; Xerox and fax to experts; also email to experts | 0.3 | |
| | Gather most recent semi-annual rport from the defendants for Xeroxing at Copy Cat | 0.1 | |
| | Pick up massive semi-annual report at copy shop for next day's meeting in Boston | 0.4 | |

| Date | Description | Time Spent |
|---|---|---|
| 6-Sep-01 | Type experts' handwritten reports; assist temp typist in deciphering handwritten reports etc. | 3.5 |
| | Forward additional med. Reports to experts | 0.4 |
| 10-Sep-01 | Fax and email report to expert | 0.3 |
| | Continue typing up sections of another expert's handwritten report | 1.8 |
| 11-Sep-01 | Filing; arrange files for production, add files recently received, start organizing | 3.1 |
| 12-Sep-01 | Fax summary to expert | 0.1 |
| 17-Sep-01 | Filing records for various classmembers | 1.5 |
| 18-Sep-01 | Finish typing handwritten notes from experts re: reports; also update c.v.'s to reflect additional information | 2.1 |
| 20-Sep-01 | Prepare and help carry boxes of nursing home records to DMR as part of production | 0.4 |
| | Review correspondence and documents re: Pilarcik report.. Type up handwritten report. | 2.9 |
| 21-Sep-01 | Review correspondence and documents re: Pilarcik report: type up faxed hand-written report; TT to review spellings; accuracy of transcription | 2 |
| | Compile reports w/ Pam; gather disclosure statements, c.v.'s for each expert, Xerox and prepare mailings... Drop off at Fed Ex for defendants | 2.5 |
| 24-Sep-01 | E-mail to Lyn Rucker re: availability, time schedule | 0.3 |
| | Filing of records correspondence | 3.1 |
| | Review and plot on map the geographic locations of each classmembers' nursing homes for touring... | 1 |
| 25-Sep-01 | Telephone to social workers at nursing homes re: additional site tours... | 2.3 |
| 26-Sep-01 | Get directions, time table for tour | 2.3 |

05/30/2003 02:10 FAX 617 727 5785    AG ADLAW DIV    → SPRINGFIELD    ☒058

| Date | Description | Time Spent (Hours) |
|---|---|---|
| | Conference with Cathy re: tours, records, depositions, time tables, schedules | 1.9 |
| 27-Sep-01 | E-mail to Lyn Rucker, with site tour info, hotel arrangements, deposition prep schedule, transportation arrangements etc. | 0.4 |
| | Filing, Xeroxing of new client records; delivering to and from copy shop | 0.8 |
| 28-Sep-01 | Revise and edit tour schedule | 0.4 |
| | Pick up Xeroxed records at copy shop | 0.5 |
| | Revise client records and finalize tour details for Cathy and Lyn Rucker. Get directions, change times to reflect classmembers; changing schedules and /or moves | 1 |
| 2-Oct-01 | Contact travel agent and hotel and transportaiton shuttle and set up arrangemetns for Liz Jones. | 0.5 |
| 3-Oct-01 | Filing, organizing new files of additional individuals added to the sample for tours | 1.5 |
| | Telephone call from Cathy re: changing tour schedule, re: connecting w/ Cathy Todd about releases for classmembers | 0.1 |
| | Telephone to nursing homes social workers to change schedule | 0.4 |
| | Accept delivery of our records from DMR; help guy carry them in | 0.5 |
| | Xerox indices of DMA production for co-counsel | 0.3 |
| | Prepare and fax release of classmember to day employment center | 0.2 |
| | Telephone to new nursing home to set up appt. for Cathy and Lyn; get directions | 0.4 |
| | Fax directions, contacts etc. to Newton office for Cathy and Lyn | 0.2 |
| 4-Oct-01 | Review client records, update tour lists, update Rolland sample list | 0.2 |

05/30/2003 02:11 FAX 617 727 5785     AG ADLAW DIV          → SPRINGFIELD          @059

| Date | Description | Time Spent | Notes |
|---|---|---|---|
| | Gather exhibits for motion: get prodocution docs. Xerox all 32-plus checklists; convert Steve's affidavit from Word into Corel; assemble | 2 | |
| | Fax Kristi copies of earlier checklists for motoin and memo; receive Joassn'e fax of Oliveira affidavit for motion | 1.2 | |
| 5-Oct-01 | Telephone from Cathy re: changes in NH tours, directions, discussion re: motion, memo, exhibits | 0.1 | |
| | Xerox motion, memo, exhibits etc and forward via FedEx to York and Wechsler | 3.5 | |
| | FedEx E. Jones tickets to Maryland for upcoming flight for deposition | 0.5 | |
| 12-Oct-01 | Organize files, schlep experts' boxes (sic) of files to lower level | 0.7 | |
| | Review client records, extract and Xerox all June 15, 2001 letters to DMR services, coordinators/Umass case mgrs re: record | | |
| 15-Oct-01 | requests | 1 | |
| | Finish drafting letters to Rucker | | |
| 19-Oct-01 | Interviewees, address envelopes and mail | 2.25 | |
| 31-Oct-01 | Xerox Pasarrs for all 45 in sample class | 2.2 | |
| | Purchase mat board, pushpins, misc. supplies | | |
| 1-Nov-01 | for exhibit for trial | 0.5 | |
| | Drop off records at copy shop in preparation for trial | 0.5 | |
| | Xerox additonal Pasarrs as exhibits | 0.3 | |
| | Filing: organize files in preparation for trial | 0.35 | |
| | Deliver exhibits, chalks, etc. to courtroom; go to store purchase various supplies (fe white- | | |
| 5-Nov-01 | out) for exhibits | 1 | |
| | Help move chalks, exhibits etc to different | | |
| 8-Nov-01 | courtroom; | 0.5 | |
| | Collect all exhibits, chalks, etc. and return to NoHo office | 1.2 | |

| Date | Description | Hours Spent |
|---|---|---|
| | Filing of immediate documents | 0.5 |
| 15-Nov-01 | Filing, organizing trial documents, files, assemble folders etc etc | 4.4 |
| 16-Nov-01 | Filing additional documents, files | 1.1 |
| 20-Nov-01 | Pack up exhibits for FHE and box and ship | 0.5 |
| | Collect, Xerox and assemble multiple exhibits for counsel and ship via regular mail, FEDEX. Collect, copy and assemble records and documents for self | 1.4 |
| | Read Frank Laski's post-trial findings, and Tow York's post-trial findings in other cases; make Xeroxes for others | 0.7 |
| | Make additional copies of of (sic) experts' reports for counsel | 0.5 |
| 30-Nov-01 | Fax findings to Frank at home | 0.2 |
| | Download trial transcripts from day 1, 3, and 4 | 0.4 |
| 4-Dec-01 | Telephone call from Frank Laski re: findings; fax drafts to MHLAC | 0.2 |
| 5-Dec-01 | E-mail from Bettina Toner seek/gn additional exhibits, email response; fax requested documents to Newton office | 0.6 |
| 6-Dec-01 | Continue reviewing trial transcripts and drafting findings for sectiosn III, IV and V; download trial transcripts to disks | 3 |
| 7-Dec-01 | Read trial transcript fro day two (just arrived) and revise and edit findings re: sections III-V... Fax draft to Frank at homert (sic) an (sic) drafted by K Harris; consutl (sic) s/K Karris re plans for trial and pre-trial proceeding beginning 5/26 | 3 |
| 12-Dec-01 | Filing, assembling records, exhibits, etc. used in preparation of drafting findings of fact | 2.3 |
| 13-Dec-01 | Fax sections on active treatment sample, spec. services to Flaski | 0.3 |

05/30/2003 02:11 FAX 617 727 5785     AG ADLAW DIV          → SPRINGFIELD     ☒061

| Date | Description | Time Spent | Work |
|---|---|---|---|
| 27-Dec-01 | Filing, organizing: records of sample classmembers, of plaintiff's and defendants' exhibits | 5.1 | |
| 28-Dec-01 | Filing; continue filing, organizing office; relocating classmembers' files from office to library storage | 4 | |
| 14-Jan-02 | Download directions, maps to nursing home... to provider agency | 0.8 | |
| 17-Jan-02 | Assemble files on two NH residents seeking community placement; make copies for Matthew; assemble regulations regarding Medicaid fair hearings | 1.1 | |
| 29-Jan-02 | Assemble exhibits and mail to provider agency with cover letter | 0.5 | |
| 7-Feb-02 | Review fax from surrogate with newly proposed DMA hours; faxed letter advising of intent to withdraw appeal; and fax from DMA nurse specifying increased PCA hours | 0.25 | |
| | Review correspondence and documents re: appeal; assemble; and file | 0.8 | |
| 25-Feb-02 | Filing; create files, labels, etc. fo rsaved documetns from bosex in library/storage | 1 | |
| 28-Feb-02 | Continue labeling and filing sorted records from library/storage | 1.8 | |
| 1-Mar-02 | Continue rifling storage files, assembling folders as needed, shredding documents with personal data | 2.2 | |
| 5-Mar-02 | Telephone and emails to Frank Laski re: rescheduled meeting with DMR | 0.3 | |
| 15-Mar-02 | Filing of new folders from saved documents from first trial production of documents | 3.1 | |
| 18-Mar-02 | Review client records: recycle and shred accordingly | 2.1 | |
| 29-Mar-02 | Filing; continue working through storage files | 1 | |

| Date | Description | Time Spent | Notes |
|---|---|---|---|
| 8-Apr-02 | File management; remove all previous tour files, all dated medical records for classmembers whom we visited in 2000 and 2001; reorganize and file in storage | 55 | 55 hours is the amount of time Ms. Boundy reported working on April 8, 2002. |
| 9-Apr-02 | Continue reorganizing files and relocate files to different cabinets | 2 | |
| 5-Jun-02 | Xerox Monday's letters to sample member et al. Create labels for envelopes and mail letters to sample classmembers, guardians, social workers, advocates | 2.1 | |
| 7-Jun-02 | Assemble and collate letters for individuals with release forms; Xerox and assemble groupings letters for each provider agency; generate labels for mailings; mail letters to classmembers | 7.2 | |
| 10-Jun-02 | Fax listings of classmembers without noted provider agency to Andrea Maislen | 0.2 | |
| | Mail letters to known providers of classmembers in the community | 0.5 | |
| 11-Jun-02 | E-mail to Frank Laski re: DMR meeting availability | 0.2 | |
| 14-Jun-02 | Filing, file management; setting up new files for incoming releases, rejected letters, correspondence with guardians, providers | 1.6 | |
| 25-Jun-02 | Telephone to UMASS case manager confirming date, time of meeting re: classmember still in NF | 0.2 | |
| 28-Jun-02 | Fax pertinent records to Cathy | 0.2 | |
| 2-Jul-02 | Fax release authroization, letter to day hab provider/advocate for class member to sign | 0.4 | |
| 8-Jul-02 | File management: setting up files to track classmembers in the community, files for defendants' policy drafts re: active treatment | 1 | |

05/30/2003 02:11 FAX 617 727 5785    AG ADLAW DIV    → SPRINGFIELD    ☒063
Case 3:98-cv-30208-KPN    Document 371    Filed 05/30/03    Page 84 of 85

Page 20 of 21

| Date | Description | Time Spent | Notes |
|---|---|---|---|
| 25-Jul-02 | Telephone call from guardian re: another individual and possible classmember re: missing release authorization; fax new authorization for signatures | 0.15 | |
| 5-Aug-02 | Draft letter to Andrea Maislen re: DMR's community placement tally; especially re: placements of individuals whose names do not appear in semi-annual reports.  Include names and placement dates; copies to all counsel; copy and mail | 2 | |
| 16-Aug-02 | Draft letter to Rolland classmembers in the community with updated addresses provided by DMR; research online for correct zip codes; print out additional release forms; get stamps for inside envelopes ; mass mailing | 0.7 | |
| 9-Sep-02 | Find motion and resend to defendants; contact clerk's office and send via fax and mail | 0.6 | |
| 10-Sep-02 | Fax active treatment policy proposal with cover letter to DMR general counsel; call office to verify receipt | 0.3 | |
| 20-Sep-02 | File documents, trial exhibits, transcripts and other materials needed for supp appendix | 1.5 | |
| | Deliver motion in opposition to defendant'sactive treatment policy to Post Office before 6 pm closing | 0.3 | |

05/30/2003 02:12 FAX 617 727 5785    AG ADLAW DIV    → SPRINGFIELD    ☒064

| Date | Description | Time Spent | Notes |
|---|---|---|---|
| 30-Dec-02 | Cull through database of Rolland members living in the community and designate classmember who never received letters requesting release authorizations In advance of monitoring visits by plaintiffs attys. Includes about 123 folks placed from March - Nov. -02. Xerox copies of release authorization. Draft letter, start writing letters | 3 | |

|  | 371.8 |
|  | $75.00 |
|  | $27,885.00 |